**Curtis Wayne MARSH, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14740.**

Court of Criminal Appeals of Oklahoma.
April 1, 1970.

Delbert Brock, McAlester, for plaintiff in error.

G. T. Blankenship, Atty. Gen., H. L. McConnell, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Curtis Wayne Marsh, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Pittsburg County for the crime of Assault with a Dangerous Weapon With Intent to Injure Any Person, After Previous Conviction of a Felony, and from the judgment and sentence fixing his punishment at eight years imprisonment in the state penitentiary, he appeals.

Briefly stated, the record discloses that the defendant and Edward Walter Moore were inmates of the Oklahoma State Penitentiary on the 20th day of December, 1968. In the main mess hall of the prison, a "commotion" occurred at about 7:20 or 7:30 a. m. on that date. Prison guard A. A. Wimbs, on duty in the mess hall, pulled the defendant off of inmate Moore. At that time he saw a knife in the hands of defendant which Guard R. L. Harrington took from the hands of the defendant. Guard Harrington testified as to this "scuffle." By the time he reached the scene, Guard Wimbs had the defendant by the arm and the defendant then handed him a knife which was introduced into evidence. Inmate Moore was observed by him to be on the floor on his side. Moore was taken to the prison hospital.

Dr. Palviz Modaber, prison physician, testified he examined inmate Moore at the prison hospital at 7:30 a. m. on December 20, 1968, in the emergency room. At that time Moore had two stab wounds in his upper left back that required sutures. The knife in evidence was examined by this doctor and he testified the knife was capable of producing mortal wounds.

The State then rested and the defendant demurred to the State's evidence and asked for a directed verdict of not guilty. This was overruled and exceptions allowed. No evidence was presented by the defense.

■ The defendant first contends that the trial court erred in overruling his Demurrer to the Information. We observe that no argument is presented and no authority is cited. We further observe that the Information does not set forth more than one offense; that the facts stated constitute a public offense; and it contains no matter which, if true, would constitute a legal justification or excuse of the offense charged, or other legal bar to the prosecution. We are therefore of the opinion that the Demurrer to the Information, containing the cover information of "After Former Conviction of a Felony" was properly overruled.

■ It is next contended that the court erred in failing to commit defendant for mental observation or to order a jury trial to determine his sanity.

We deem it unnecessary to set forth the testimony presented to the court on this issue. Judge Bell's statement and ruling at the conclusion of the hearing appears in the record as follows:

"COURT: I am going to agree with Mr. Marsh. He goes into considerable detail about commitment to Central State Hospital, the nervous breakdown. He knows each of the other charges. He knows that his proper defense in this case is. He goes into the law and well does. He goes into the discussing of whether the use of the knife under these circumstances would be a deadly weapon. There is not any doubt in the mind of the Court. Hinex v. State, [Okl.Cr.], 417 P.2d 339. It fits that case. There the man had been sent to Taft and discharged as normal. The psychiatric diagnosis was degenerative manic depressive. He was released, and restored. It doesn't fit Marshall v. Territory, [2

Okl.Cr. 136] 101 P. 139, which is adopted in later cases. The court has to be advised from reputable sources that the defendant is insane, under oath. That means in someone's opinion. Sanity is always presumed and the burden is on the person raising the issue. Bingham v. State [82 Okl.Cr. 5]. There is not the slightest doubt Mr. Marsh can do as he says he can do. He was confused. He didn't understand the full import of A. F.C. That has been explained to him. I am going to deny the petition."

In accordance with the Judge's ruling and the authority cited therein, we are of the opinion that this assignment of error is without merit.

Defendant next contends that since there was no witness who did testify to actually seeing the defendant cut or stab the victim, the Demurrer and Motion to Quash should be sustained.

█ We need only observe that the record discloses that two guards saw the defendant and the victim fighting or scuffling on the floor of the main mess hall of the Oklahoma State Penitentiary; that the defendant was immediately pulled off of the victim by one of the guards and a knife was immediately taken from the hand of the defendant by the other guard, and that when the victim was examined immediately thereafter by a prison physician, the victim had knife wounds on his body. This, we believe, to be very strong circumstantial evidence. In the case of Sasser v. State, Okl.Cr., 414 P.2d 714, we held in the Syllabus:

"Where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty; the weight, credibility, and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence."

█ Defendant next asserts that the court erred in allowing an improper witness to testify for the State. On the morning of the trial, the court permitted the endorsement of J. Virgil Choate, records clerk of the Oklahoma State Penitentiary, as a witness to introduce the penitentiary records when it was discovered that the assistant records clerk, Mr. Majors, was unable to appear because of a family tragedy. The defense objected to the presentation of this witness, but did not withdraw announcement of ready for trial and did not file a motion for postponement or continuance.

We are of the opinion that the substitution of the name of one clerk for that of another to introduce the same records provided no surprise to the defense, and his announcement of ready for trial, and no request for continuance, waived any objection he might have had.

█ The defendant next urges that the verdict was excessive and was prompted by passion or prejudice. With this we cannot agree, for the punishment imposed is well within the range provided by law.

█ It is lastly contended that 21 O.S. § 51, "Second offense after conviction of offense punishable by imprisonment in penitentiary" is unconstitutional as subjecting a person to double jeopardy. This question has been before our Court many times. In the fourth paragraph of the Syllabus of In Re Schechter, 94 Okl.Cr. 85, 231 P.2d 411, Cert. den. Schechter v. Burford, 342 U.S. 855, 72 S.Ct. 81, 96 L.Ed. 644, we stated:

"Habitual criminal statute, Title 21 O.S. A., §§ 51 and 52, is a valid, existing penal provision and does not conflict in any way with the constitutional guaranties possessed by the accused."

And further, in Hunter v. State, Okl.Cr., 375 P.2d 357, we held that the habitual criminal act does not invade the privileges and immunities of the citizen, does not deny equal protection of the law or due process, or constitute unjust discrimination or double jeopardy.

Having dealt with all the assignments of error urged on appeal, we are of the opinion that the defendant had a fair and impartial trial, that the issues were properly

submitted to the jury; that the evidence amply supports the jury's verdict, and the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and NIX, J., concur.