Frank E. MINISTER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17155.

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1973.

Gotcher & Gotcher, McAlester, for appellant.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., Frank Muret, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Frank E. Minister, hereinafter referred to as defendant, was charged and tried in the District Court of Pittsburg County for the offense of Assault and Battery With Intent to Kill, After Former Conviction of a Felony. He was found guilty of the lesser offense of Assault and Battery with a Dangerous Weapon, After Former Conviction of a Felony. His punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Dr. Kenneth Evensen testified that he was the prison doctor. On the afternoon of January 8, 1971, he examined Claude Baeza at the prison hospital. Baeza had three superficial wounds across his anterior chest, a deeper wound on his left side, and a superficial wound on his left hand. He testified that the wound on the left side was the only serious wound and that, in his opinion, the lung had been punctured because there was air bubbling through it. Because of the limited facilities at the hospital, the wounds were dressed and Baeza was transferred to McAlester General Hospital.

O. A. Martin testified that he was employed at the state penitentiary and assigned to the laundry. At approximately 2:25 p. m., he observed the defendant and Baeza scuffling at the east end of the laundry. He "rushed down that way and observed the defendant stabbing at Baeza with a knife." He observed the defendant stab at him three times. He grabbed Minister's right hand and removed a knife, which he identified as State's Exhibit 1. He did not see Baeza with any type of weapon. He took the defendant to the lieutenant's office and noticed "a little blood on his mouth." (Tr. 39) On cross-examination, he testified that he did not see the fight start.

Clyde Mackey testified that he observed the defendant on the afternoon in question when he was brought to the lieutenant's desk. He observed the defendant as he changed clothes. The defendant had a little scratch on his hand and had what appeared to be blood on the corner of his mouth.

For the defense, Riley Jones testified that he was presently an inmate of the penitentiary. He testified that he had four prior felony convictions. On the afternoon in question, he was working in the laundry. He heard Baeza tell the defendant that "If you don't leave that boy alone, I am going to do my God Damnedest to kill you." (Tr. 66) A short time later, Baeza jumped off a table, reached into his coat and ran up to the defendant. They struggled and both fell to the floor. The defendant got up and started backing up, telling Baeza to stop. Baeza kept coming toward the defendant and they again fell to the floor. The defendant yelled "help" several times. Mr. Martin came up and stopped the fight. He did not see a knife on either person. He further testified that Claude Baeza had a reputation in the penitentiary as being a quarrelsome, violent turbulent person.

George Warlock testified he had been convicted of five felonies. His testimony as to what transpired in the laundry did not differ substantially from the testimony of Riley Jones. He further testified that Baeza had previously told him that "if he thought he could get away with it, he would get Frank." (Tr. 109)

Bill Baker testified he was presently serving a thirty-five year sentence for Armed Robbery and that he had six other felony convictions. He testified that Claude Baeza had a reputation of being a very violent, quarrelsome, dangerous, turbulent person.

Hubert Bales testified he was serving an eleven to thirty-three year sentence and had four prior convictions. His testimony as to what transpired in the laundry did not differ substantially from the testimony of Jones and Warlock.

■ The first proposition asserts that "the court erred by not directing a verdict for acquittal for defendant as the evidence did not sustain the charge of assault and battery with intent to kill or assault and battery with a dangerous weapon, and that the rights of defendant were prejudiced thereby." Defendant argues that the State totally failed to prove defendant's intent. In Ryans v. State, Okl.Cr., 420 P.2d 556, we stated:

"It is well established that where one is on trial charged with an offense, the commission of which requires a specific intent, such intent may be proved by circumstantial evidence. * * *"

We are of the opinion that the State proved defendant's intent by circumstantial evidence. In Marsh v. State, Okl.Cr., 468 P.2d 800, wherein the facts were similar to the case at bar, we stated:

"We need only observe that the record discloses that two guards saw the defendant and the victim fighting or scuffling on the floor of the main mess hall of the Oklahoma State Penitentiary; that the defendant was immediately pulled off of the victim by one of the guards and a knife was immediately taken from the hand of the defendant by the other guard, and that when the victim was examined immediately thereafter

by a prison physician, the victim had knife wounds on his body. This, we believe, to be very strong circumstantial evidence. In the case of Sasser v. State, Okl.Cr., 414 P.2d 714, we held in the Syllabus:

'Where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty; the weight, credibility, and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence.'"

We therefore conclude that the question of defendant's intent was properly presented to the jury. We therefore find this proposition to be without merit.

■ The second proposition contends that the court erred in failing to grant defendant's motion for continuance. The motion was based on the unavailability of a witness, Jackie Brown, who had previously been discharged from the penitentiary. We have examined defendant's affidavit filed in support of his motion for continuance and observe that the testimony of Jackie Brown would be cumulative of defendant's other witnesses. In Griffin v. State, Okl.Cr., 453 P.2d 278, we stated in the third paragraph of the Syllabus:

"In reviewing the refusal of a continuance due to absence of a witness, the record will be examined and the evidence considered by this Court to determine whether there are any facts which show that the defendant was materially prejudiced by reason of failure of the trial court to grant a continuance; and in the absence of an abuse of discretion, this Court will not disturb the ruling of the trial court."

We are of the opinion that the trial court did not abuse its discretion in denying the motion for continuance.

■ The final proposition asserts that the court erred in not allowing the attorney for the defendant to present an opening statement. The record reflects that at the conclusion of the State's opening argument that defendant reserved his opening statement. At the conclusions of the State's case-in-chief, the defendant put on his evidence without objection to proceeding without first making an opening statement. The first time any objection to the exclusion of the opening statement was made at the conclusion of the rebuttal testimony of the State. In McCluskey v. State, Okl.Cr., 372 P.2d 623, we stated in the second paragraph of the Syllabus:

"A defendant in criminal cases may waive any right, not inalienable, given him by statute or by constitution which can be relinquished without affecting rights of others and without detriment to the community at large; and such waiver may be made either by express agreement or by conduct, or by failure to insist upon a right in seasonable time."

We therefore find this proposition to be without merit.

The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., and BRETT, J., concur.