**Jimmie Lee BROWN, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–73–380.**

Court of Criminal Appeals of Oklahoma.

Jan. 25, 1974.

Shirley & Stephenson, Watonga, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., M. Joe Crosthwait, Jr., Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court, Blaine County, Case No. CRF 73–4, appellant, Jimmie Lee Brown, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Grand Larceny, After Former Conviction of a Felony. His punishment was fixed at five (5) years imprisonment and from that judgment and sentence, he has perfected his timely appeal to this Court.

H. L. Harrison, Division Special Agent for the Rock Island Railroad, testified that in mid-January of 1973 he conducted an investigation concerning the taking of a quantity of journal brass allegedly taken on January 17, 1973, from several railroad boxcars parked at Geary, Oklahoma. Harrison described the objects taken as brass wheel axle bearings used on railroad boxcars. Pursuant to the investigation, Harrison found a jack imprint in the soil in the area which would have been beneath one of the boxcars from which some of the journal brass was taken. Harrison testified that the jack which made the imprint was not a standard railroad jack. He further testified to the unique characteristics of the imprint made by this jack, adding the base of State's Exhibit 5, an hydraulic truck jack, identically matched the imprint found at the above location. Harrison, after pointing out a wedge in the base of the jack, testified the imprint in the soil maintained a pinnacle in the identical same spot as the wedge in the base of the jack. Finally, Harrison testified that pursuant to

his investigation, fifteen (15) journal brass bearings of an approximate weight of four hundred eight (408) pounds were found in a culvert approximately eleven (11) miles from Geary, Oklahoma, in Canadian County.

Mr. A. J. Brown testified that on January 16, 1973, the defendant approached him at his residence at approximately 12:00 a. m. requesting that he loan him a jack. Brown testified that he did not lend him one as he did not have one in his possession.

Mr. Chester Brown testified that on January 16, 1973, between the hours of 12:30 and 1:00 a. m. he was approached on main street by the defendant and one Ural Lee Richey. At this time defendant asked to borrow a jack from Brown. However, Brown responded that he did not have one in his possession.

Mr. Warren Carter testified that on the above mentioned date that he loaned defendant State's Exhibit 3 (an hydraulic jack), a railroad lantern, and a pair of pliers. The defendant told him at the time of the loan that Ural Lee Richey would return them to him. On the following day, after the pair had not returned the jack, Brown proceeded to Ural Lee Richey's residence where he observed State's Exhibit 3.

Guy Phillips testified that on the above mentioned date he loaned coveralls and overshoes to defendant. Upon their being returned the following day, there were grease spots on the coveralls. Although he was uncertain as to their condition at the time of the loan, he did not recall the coveralls having grease spots on them prior to defendant taking them into his possession.

Richard Kurtz, Geary Chief of Police, testified he observed footprints about the area where the jack impressions were found and further stated they were made by a man wearing overshoes. Further, Kurtz testified that he obtained State's Exhibit 3 from Warren Carter and maintained possession of State's Exhibit 3 until approximately one week prior to trial. At that time, the jack was loaned to a third

party, but he affirmatively stated that State's Exhibit 3 was one and the same jack he obtained from Carter pursuant to his investigation.

Clyde Smith testified that the journal brass, consisting of State's Exhibit Nos. 1 and 2, sold on the market for approximately twenty cents (.20) per pound.

Ural Lee Richey, co-defendant, testified that at approximately 10:00 p. m. on January 16, 1973, he and defendant met at his home. The defendant asked him if he had an hydraulic jack as he stated he was going to get some brass. Together, they proceeded to the residences of A. J. Brown and Chester Brown where they failed to obtain a jack. From there they drove to the residence of Warren Carter where the defendant obtained a jack, lantern, and a pair of pliers and the pair drove to the railroad tracks. At the tracks, with the use of the jack, they raised the wheels of several railroad cars and removed fifteen (15) journal brass bearings. Thereafter, they loaded the brass in his car. At approximately 6:30 a. m. on the following morning they drove to Oklahoma City to sell the brass. The sale was unsuccessful so they returned to Geary where Richey eventually unloaded the brass under a culvert.

Thereafter, the State rested.

George Bomhoff, Clyde Smith, Lester White, Fenton Ramey, and Garland Bloodworth testified to defendant's good character and reputation in the community.

The defendant testified establishing his alibi to be that he was at a friend's house on the day in question and at approximately 10:00 a. m. Richey appeared at this house stating he needed an hydraulic jack as he had a truck stuck in some mud. The defendant told Richey he could obtain a jack for him. They drove to the previously mentioned residences to obtain a jack, ultimately obtaining one from Mr. Warren Carter. Thereafter, the defendant delivered the jack to Richey, he returned to his friend's home, and later that night returned to his house in El Reno. The defendant denied being with Richey at the

time the journal brass was taken, further stating Richey was the person responsible for the theft.

Thereafter, the defense rested.

██ Defense counsel argues in his first and third propositions that the circumstantial evidence is insufficient to corroborate the accomplice's testimony. It is a well settled rule that if the State's evidence consists entirely of uncorroborated testimony of an accomplice, the trial court should sustain a motion for a direct verdict. Lowery v. State, Okl.Cr., 489 P.2d 222 (1971). However, if the testimony of an accomplice is corroborated by one material fact or facts by independent evidence tending to connect defendant with the commission of a crime, the jury may from that infer he speaks the truth as to all. Nation v. State, Okl.Cr., 478 P.2d 974 (1970). Further, the accomplice's testimony may be corroborated by circumstantial evidence. Sizemore v. State, Okl.Cr., 507 P.2d 1330 (1973).

██ In the instant case, the evidence adduced at trial indicated defendant shortly prior to the commission of the crime was involved in obtaining a jack; that he did in fact on the evening of the offense borrow a jack from Warren Carter, a jack which had certain particular characteristics matching the characteristics of the jack used in the crime; and, that the defendant had shortly prior to the commission of the crime borrowed from his uncle certain coveralls and overshoes which upon return to their owner possessed mud and grease spots. Further, at the scene of the crime there were tracks of the type made by overshoes. Finally the evidence revealed that shortly prior to the commission of the offense defendant and his accomplice were seen together. Considering the above factors, particularly the evidence regarding the unique characteristics of the jack and those facts and circumstances surrounding the defendant's obtaining a jack, it is this Court's opinion the circumstantial evidence is sufficient to corroborate the accomplice's testimony, as it tends to connect the defendant with the commission of this offense. Considering the requirement only slight corroboration is required to meet the burden of corroborating an accomplice's testimony, Sparks v. State, 94 Okl.Cr. 416, 237 P.2d 159 (1951), it is our opinion that this case was properly submitted to the jury for its determination. Marsh v. State, Okl.Cr., 468 P.2d 800 (1970). We therefore find this proposition to be without merit.

 In defense counsel's second proposition it is argued that the jack should not have been admitted into evidence as the evidential chain of custody was broken. While it is the general rule in this jurisdiction that a party offering demonstrative evidence must show to a reasonable certainty that the exhibit has not been altered or tampered with, all possibility of alteration need not be negated and if there is only the bare speculation that tampering could have occurred, it is proper to admit evidence and let what doubt there may be go to its weight. Trantham v. State, Okl.Cr., 508 P.2d 1104 (1973). In the case at bench, there is no question but what the chain of custody was broken at the time the police officer allowed a third party to use State's Exhibit 3. However, Officer Phillips affirmatively stated there was no question in his mind that State's Exhibit 3 was the same jack taken from Warren Carter subsequent to the commission of the above mentioned offense. State's Exhibit 3 is of such a character that only the barest speculation would permit one to conclude the jack had been altered or exchanged during the time it was outside the custody of the police officer. Consequently, although the chain of custody was broken, the break does not provide a ground for reversal of the above conviction. However, we note a caveat in the application of this opinion. In dealing with contraband or substances wherein a chemical analysis is necessary, and a layman would be unable to identify the substance as the same substance taken under a particular set of circumstances, a break in the chain of custo-

902

dy similar to the instant case would be of grave concern. Considering the fact that Officer Phillips was able to identify State's Exhibit 3 as the same jack taken from Warren Carter and considering the fact that Warren Carter also identified State's Exhibit 3 as the same jack which was loaned to defendant, we find the break in the chain to be harmless and the evidence to be admissible. The identity of the evidence has been sufficiently established to render it admissible. We therefore find this proposition to be without merit.

The judgment and sentence is affirmed.

BRETT and BUSSEY, JJ., concur.