Ronnie Jay DUNFORD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–901.

Court of Criminal Appeals of Oklahoma.

March 15, 1977.

Joe W. Hamlin, Burton & Hamlin, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Harold T. Garvin, Jr., Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BLISS, Judge:

Appellant, Ronnie Jay Dunford, hereinafter referred to as defendant, was charged in the District Court, Comanche County, Case No. CRF–76–117, with the offense Robbery in the First Degree, After Former Conviction of a Felony. The case was tried to a jury and a guilty verdict was returned. Punishment was assessed at ten (10) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court. A co-defendant, Leland Dunford, was tried at the same time and convicted of Robbery in the First Degree.

The first witness called on behalf of the State was Daniel Colon Estrada. Mr. Estrada testified that on January 25, 1976, at approximately 12:05 in the morning, he was at the African Breeze, a bar in Lawton, Oklahoma. The witness stated that he was approached about a drink by the defendant Ronnie Jay Dunford, during the evening, and that the defendant persisted in asking the witness for a drink throughout the evening. The witness stated that as he was leaving the African Breeze, he was grabbed by two individuals both of whom he identified as the defendants. These individuals forced him up against the door to the African Breeze and the defendant Ronnie Jay Dunford placed his hand in the victim's right pocket and took about $20.00. The witness stated he received a couple of bruises from the incident and stated he was pushed and shoved up against the door, and held there a period of time when someone was trying to open the door from the inside tavern.

Mr. Estrada further identified State's Exhibit No. 1, as a coat he had worn during the evening, and he stated further that during the incident, defendants had torn his coat. The witness further testified that following the commission of the crime, he retained possession of State's Exhibit No. 1 in his closet at home until the preliminary hearing when he turned the coat over to Assistant District Attorney Hackler.

Mr. Estrada further testified that the door he had been held up against was finally forced open and the club manager, Mr. Smith, asked what was going on. The witness related that he informed Smith that he had been robbed and asked Mr. Smith to call the police. Mr. Estrada further testified that he observed the defendants walk across the street and later accompanied the police and Mr. Smith across the street in to another bar, where he identified the defendants who were then arrested.

On cross-examination the witness related that he had been to several taverns before he had gone to the African Breeze on the night in question, and he further stated that he had had a couple of beers during the evening. In relation to State's Exhibit No. 1, the witness denied ever repairing the coat or tampering with it in any way.

The next witness called on behalf of the State was John Smith. Mr. Smith related that he was the manager of the African Breeze and stated that he was at the club on January 25, 1976, at approximately 12:05 a.m. when he observed a customer of his try to force the front door open so he could leave the premises. The witness stated he helped his customer open the door, stuck his head out and observed the defendant and his brother, co-defendant, releasing Mr. Estrada. Mr. Smith asked what was going on, and the witness stated that he was informed by Mr. Estrada that the defendants had taken $20.00 from him and further stated that the defendants denied the accusations at that time. The witness testified that he called the police, waited until the unit arrived, and proceeded across the street with the officers to the club Delisa where the defendants were arrested.

On cross-examination the witness testified to the lay-out of the African Breeze. Mr. Smith also stated he had previously been convicted on two occasions and was paroled in March, 1973.

The State then rested.

The first witness called on behalf of the defense was Ruby Wright who stated that she was the proprietor of the club Delisa. The witness stated that she had known the defendants nearly all of their lives and recalled on January 25, 1976, she was present when the two men were arrested. The witness further stated she did not see the defendants exchange money during the time they were in her establishment. On cross-examination the witness stated there could have been a transfer of money or funds without her seeing the transaction.

Vivian Margrave was called as the next defense witness, and she related that she was employed by Unique Products as a sales person. The witness stated that she was acquainted with the defendant and stated that on January 25, 1976, she was at the African Breeze. She further stated that she observed Mr. Estrada talking to

the defendants in the African Breeze and observed the three men leave and go outside of the tavern.

On cross-examination the witness related that she had previously been convicted of soliciting, second degree burglary, prostitution, and shop lifting.

Charles Scott Jr. was called as the next defense witness. The witness stated that he first observed the victim, Mr. Estrada, at the bus station across the street from the African Breeze and that the victim was offering people drinks. The witness stated the victim appeared to be intoxicated and at one point during the evening left with two girls, and returned later to the African Breeze. The witness stated he could see outside from his van to a point inside the African Breeze when the manager opened the door and he observed the defendants merely standing outside in a normal fashion. On cross-examination the witness stated that he had never been convicted of anything but voluntarily remarked that he had a robbery case pending in court. Following the testimony of this witness, the defense rested and the State recalled Mr. Estrada.

Mr. Estrada related that he had never solicited favors from women in the African Breeze and did not try to engage the defendant in a conversation. Following the rebuttal testimony of Mr. Estrada, both the State and the defense rested.

■ In his first assignment of error, defendant contends that there were errors made in the court's instructions to the jury. The following colloquial is determinative of this matter:

"THE COURT: Mr. Saenz, I will inquire of you as counsel for the Defendants have you examined court's proposed instructions number one through eleven?

"MR. SAENZ: I have, Your Honor.

"THE COURT: Do you have any objections?

"MR. SAENZ: No objections.

"THE COURT: Any requested instructions?

"MR. SAENZ: No requested instructions." (Tr. 91)

We have often held that failure to object to the court's proposed instructions, and failure to request instructions, constitutes a waiver of the same. See, *Jaggers v. State,* Okl.Cr., 549 P.2d 384 (1976). The assignment of error is therefore without merit.

■ The defendant complains in his second assignment of error that the court failed properly to admonish the jury before several recesses, as required by 22 O.S.1971, § 854. While it is true that the record fails to show that the admonishments were given, the record also fails to show that any objection thereto was made by the defendant, or that the jury acted improperly. The defendant's second assignment of error is therefore lacking in merit. See, *Bryant v. State,* Okl.Cr., 521 P.2d 402 (1974).

■ In his third assignment of error, the defendant contends that State's No. 1, the coat worn by the victim on the night of the robbery, was improperly admitted into evidence. The coat was identified by the victim at trial, and he stated that several large tears in the fabric were caused by the defendants when they accosted him. The defendant objected to the admission of this evidence on the ground that the chain of custody of the coat was not properly established. The victim had retained the coat in his possession after the incident and surrendered the coat to the District Attorney at the preliminary hearing. The victim testified at trial that while in his possession, the coat had remained in his closet and had not been repaired or altered in any way since the night of the robbery.

In support of his contention, defendant cites *Faulkenberry v. State,* Okl.Cr., 551 P.2d 271 (1976). However, this case is inapplicable to the case at bar inasmuch as the evidence contested in *Faulkenberry,* supra, was marijuana, and there is patently no way to distinguish one baggie of marijuana from another absent some proof of a chain of custody showing that the marijuana introduced into evidence is the same as that originally obtained by the officer from the defendant. In the present case, the evi-

dence contested is not a "fungible" item as marijuana is, in that the coat was unique and therefore easily identifiable.

In *Brown v. State,* Okl.Cr., 518 P.2d 898 (1974), we dealt with a similar question wherein the admission of the State's Exhibit No. 3, a hydraulic jack, was in question. In *Brown, supra,* where the State's proof affirmatively showed that the chain of custody had been broken, we said:

"State's Exhibit 3 is of such a character that only the barest speculation would permit one to conclude the jack had been altered or exchanged during the time it was outside the custody of the police officer. Consequently, although the chain of custody was broken, the break does not provide a ground for reversal of the above conviction. However, we note a caveat in the application of this opinion. In dealing with contraband or substances wherein a chemical analysis is necessary, and a layman would be unable to identify the substance as the same substance taken under a particular set of circumstances, a break in the chain of custody similar to the instant case would be of grave concern."

The defendant's third assignment of error is therefore without merit.

In his fourth and final assignment of error, the defendant asserts that there was insufficient evidence to support a conviction of robbery. Title 21, Oklahoma Statutes, 1971, Section 791 defines robbery:

"Robbery is a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

The primary tenet of the defendant's argument is that the State wholly failed to prove that the victim was induced by fear to part with his property. However, in as much as the defendant was charged with robbery by force and the State presented evidence to show that the victim's coat was torn, that he was bruised, and forceably pushed up against the door to the club, there was sufficient evidence to support a conviction. It was not necessary to show that the defendant was placed in fear during the transaction. In *Whitehead v. State,* Okl.Cr., 526 P.2d 959 (1974), when confronted with a similar issue, this Court held:

"First, since the testimony of Officer Shobert was sufficient to establish the element of force, it was unnecessary to further prove the element of fear. See 21 O.S.1971, § 797, supra, which describes robbery as a wrongful taking accomplished by means of force or fear, not force and fear." (Footnote omitted.)

The defendant's fourth assignment is without merit.

For the foregoing reasons the judgment and sentence is *AFFIRMED.*

BUSSEY, P. J., and BRETT, J. concur.