Cecil Ethridge ERVIN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–726.

Court of Criminal Appeals of Oklahoma.

June 26, 1978.

S. David Hopper, Watonga, for appellant.

Larry Derryberry, Atty. Gen., Michael P. Kane, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Presiding Judge:

Appellant, Cecil Ethridge Ervin, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Blaine County, Case No. CRF–75–15, of the offense of Assault and Battery With a Deadly Weapon With Intent to Kill, in violation of 21 O.S.1971, § 652. His punishment was fixed at eight (8) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

Roy Dean King testified that on the evening of February 25, 1975, he was at Fritz Hoffman's bar in Geary, Oklahoma. He was playing pool with the defendant and Richard Craighead. King got into an altercation with the defendant, who struck him with a beer bottle. The defendant then picked up a cue ball and threatened King with it, but King also picked up a ball and struck the defendant with the ball in his hand. The defendant said he was going home to get his gun and kill King. The defendant left the bar and returned approximately ten minutes later. The defendant shouted King's name from just outside the building, and King ran toward the defendant. Defendant shot him in the stomach.

The weapon used by the defendant was a 30.06 rifle.

Richard Craighead testified that he was present in the bar on the evening in question. He was playing pool with Roy King when the defendant stated he was going to urinate in a side pocket. They began arguing and the defendant attempted to strike King with a beer bottle, but they both grabbed a cue ball and King struck the defendant. The defendant then said he was going to get his gun and kill King. Craighead took the defendant home in his car and told him to "sleep it off." Craighead returned to the bar and ordered a beer. The front door of the bar opened and defendant stood in the doorway with a rifle. King ran toward the defendant, who shot him. King fell on the gun, which was left at the scene. King testified that State's Exhibit No. 1 appeared to be the same rifle he had observed that evening.

Fred Hoffman testified that on February 25, 1975, he operated a tavern in Geary. At about 6:30 p. m. the front door of the tavern flew open and the defendant came in the door with a gun in his hand. King started toward the defendant, the defendant fired the gun and King fell forward. Hoffman testified that the gun fell just outside the door. The rifle was later picked up by law officials.

Officer Chester Brown testified that on February 25, 1975, he investigated a shooting at the Geary tavern. He picked up a 30.06 rifle and placed it in the police unit. The weapon was subsequently delivered to the Sheriff's Department. Officer Brown identified State's Exhibit No. 1 as the gun he recovered at the scene.

Officer Henry Rhodes testified that he went to Geary on the evening of February 25, 1975, with Deputy Halverson. He obtained a rifle from Chief of Police Kurtz and together with Deputy Halverson transported it to the Sheriff's Office in Watonga. Officer Rhodes testified that the rifle was a French made military rifle, either a 7 mm. or a 30.06. He identified State's Exhibit No. 1 as the weapon he took to Watonga.

Teddy King testified that he was in the bar on February 25, 1975. The door of the bar flew open and his brother ran toward the door. A shot was fired and he observed his brother lying on the ground.

Dr. Richard A. Conley testified that he treated someone named King on February 25, 1975. The patient was in shock and had received a gunshot wound to the abdomen. The projectile perforated the colon and "severed the tubing going from the kidney to the bladder." He testified that in his opinion if King had not received emergency medical treatment he would have died.

Beverly Jean Craighead testified that she was also present in the bar the evening King was shot. Her testimony did not differ substantially from the testimony of the previous witnesses.

For the defense, Annie Ervin, the defendant's mother, testified that the defendant came home on February 25, 1975, at approximately 8:30 p. m. The defendant was "pretty drunk" and his head was bleeding from a large knot. He was incoherent and had to be helped to bed.

██ The defendant asserts in his first assignment of error that the trial court erred in allowing the rifle to be admitted into evidence due to the incomplete chain of custody and lack of protection against alteration, tampering, or substitution. We need only observe that although there was a gap in the chain of custody, because of the character of the exhibit there was sufficient identification to permit its introduction into evidence. Officer Chester Brown identified the exhibit as the same gun which he picked up at the scene and placed in a police unit. Officer Rhodes likewise identified the weapon as being the one he obtained from the Chief of Police and transported to the Sheriff's vault in Watonga. In *Brown v. State*, Okl.Cr., 518 P.2d 898 (1974), wherein the defendant complained of the chain of custody of a hydraulic jack, we stated:

". . . State's Exhibit 3 is of such a character that only the barest speculation would permit one to conclude the jack had been altered or exchanged during the time it was outside the custody of the

police officer. Consequently, although the chain of custody was broken, the break does not provide a ground for reversal of the above conviction. However, we note a caveat in the application of this opinion. In dealing with contraband or substances wherein a chemical analysis is necessary, and a layman would be unable to identify the substance as the same substance taken under a particular set of circumstances, a break in the chain of custody similar to the instant case would be of grave concern. . . ."

See also, *Dunford v. State*, Okl.Cr., 561 P.2d 579 (1977), and *Hicks v. State*, Okl.Cr., 503 P.2d 243 (1972).

██ Defendant contends in his last assignment of error that the trial court erred in overruling his demurrer. The defendant argues that the State failed to prove that the victim was shot with a French manufactured bolt-action 7 mm. rifle as alleged in the information. We are of the opinion that this assignment of error is wholly without merit. The uncontradicted evidence was that the defendant shot Roy Dean King with a rifle which caused serious and grievous injury. The lack of positive identification of the witnesses as to the exact caliber of the rifle as being a 7 mm. or a 30.06 is totally immaterial. It is likewise immaterial as to the origin of the weapon, either France or Spain. It is only material that the same was a firearm which was used in such a manner as to likely produce the death of another. See, 21 O.S. 1971, § 652.

In conclusion, we observe that the record is free of any error which would cause reversal or justify modification. The judgment and sentence is, accordingly, AFFIRMED.

CORNISH and BRETT, JJ., concur.