**Alphonzo CARTER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–330.**

Court of Criminal Appeals of Oklahoma.

Oct. 21, 1988.

T. Hurley Jordan, Public Defender of Oklahoma County, Oklahoma City, for appellant.

Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Alphonzo Carter, was tried by jury in the District Court of Oklahoma County for the crime of Robbery with a Dangerous Weapon, After Former Conviction of Two Felonies, in violation of 21 O.S.1981, §§ 801 and 51(B), in Case No. CRF–84–966. The jury found appellant guilty and sentenced him to sixty-five (65) years' imprisonment. The trial court entered judgment and sentenced appellant in accordance with the jury's verdict. From this judgment and sentence, appellant has perfected his appeal to this Court.

On the morning of February 26, 1984, at approximately 7:00 a.m., the Circle K store located at 7000 East Reno in Midwest City was robbed by a man carrying a large knife. Mabel Okeke, the store clerk, was forced to open the store's two cash registers, and the man removed about $403.00. When the police arrived, Miss Okeke de-

scribed the robber as a black male, between 5' and 5'6" in height, wearing a dark colored jacket, maroon sweater cap, and dark pants which were not jeans. She further stated that the robber carried a butcher knife, had a line mustache, and one eye which looked "a little bit off." (Tr. 47) Miss Okeke testified that the robber removed two cartons of Salem Light 100 cigarettes before leaving the store.

At 10:40 a.m. the same day, Officer Tom Custer of the Edmond Police Department observed a white over red Pontiac Grand Prix, license number CS–7410, run a stop sign. Officer Custer engaged his lights and siren and the Pontiac accelerated and attempted to elude him. The car crashed into an embankment and its sole occupant jumped out and fled on foot. Officer Custer apprehended the man who was later identified as the appellant, and testfied at trial that appellant had a brown glove on his right hand and a crescent wrench between his belt and pants. A search incident to arrest uncovered a paper sack containing $252.83 in one of appellant's pockets. The car was impounded and transported to the Edmond Police Department. A search of the license tag revealed that the vehicle belonged to appellant's parents.

The day after the robbery, Miss Okeke was presented a stack of six photographs at the Edmond Police Department by Detective Warren Kimbell of the Midwest City Police Department. All of the photos were of black males of approximately the same age, weight, and hair length, who possessed line mustaches. Miss Okeke positively identified appellant's photograph as the man who robbed the store the previous day. These photographs were admitted into evidence without objection, as State's Exhibit No. 8. Miss Okeke also identified appellant at the preliminary hearing and again at trial.

■ In his first assignment of error, appellant claims that Miss Okeke's identification of him through the photographic lineup was unreliable and thus should not have been admitted into evidence. We do not agree. First we note that appellant waived any alleged error by failing to timely object to the identification procedures. *Hicks v. State*, 713 P.2d 18 (Okl.Cr.1986). Nonetheless, we find that Miss Okeke's in-court identification of appellant was independently reliable and that it was thus properly admitted.

In *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the United States Supreme Court held that regardless of the suggestiveness of a particular pretrial identification procedure, such confrontation evidence is admissible if, under the totality of the circumstances, it is deemed independently reliable. Factors used in determining the reliability of the identification evidence include: the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of this prior description of the criminal; the level of certainty demonstrated at the confrontation; and, the time between the crime and confrontation.

Applying these factors to the case at bar, we are satisfied that the identification was independently reliable and thus properly admitted. Miss Okeke had approximately three minutes in which to view the robber at close range. She testified that she paid particular attention to the robber's face in order to provide the police with a good description. Furthermore, her description, given to the police just minutes after the robbery, was very specific and included important characteristics of the robber, such as the wandering eye. Also, Miss Okeke positively identified the appellant from the photographs, and then visually identified him at the preliminary hearing. Finally, Miss Okeke's initial identification of appellant was made the day after the robbery. We therefore deny appellant's first proposition.

■ In his second assignment of error, appellant alleges that the trial court erred in failing to sua sponte give a cautionary eyewitness identification instruction. *See* OUJI–CR–820 (1981). We note that because appellant failed either to request such a cautionary instruction or submit one of his own, he waived all but fundamental error on appeal. *See Simpson v. State,*

744 P.2d 207, 209 (Okl.Cr.1987). Regardless of his waiver, we find that the circumstances of Miss Okeke's identification did not warrant a cautionary instruction.

In *Klinekole v. State*, 705 P.2d 179, 183 (Okl.Cr.1985), we stated that

a cautionary instruction should be given where the witness lacked opportunity to observe the assailant, or where the witness was not positive in his identification, or where the identification was weakened by either qualification or by a failure to identify the defendant on a prior occasion.

Because Miss Okeke had ample opportunity to observe appellant, and made two positive and unqualified pretrial identifications of him, a cautionary instruction was unnecessary. When the eyewitness testimony is as positive and unequivocal as it was in this case, a cautionary instruction is unwarranted and might even be confusing to the jury. *See Driskell v. State*, 659 P.2d 343 (Okl.Cr.1983); *Hall v. State*, 565 P.2d 57 (Okl.Cr.1977). The instructions given to the jury in the instant case were proper and fair. Accordingly, appellant's second assignment of error is denied.

■ For his third assignment of error, appellant alleges that the trial court erred in admitting two cigarette butts into evidence because their chain of custody had been broken. After the Edmond police impounded the car appellant was driving, they discovered that it belonged to appellant's parents, who unsuccessfully attempted to obtain its release. Officer Yardly, a technical investigator for the Edmond Police Department, then examined the vehicle; the record does not reveal whether he also made an inventory of the car's contents at that time. He photographed and searched its interior, removed a rusty butcher knife from under the driver's seat, and observed but did not remove two cartons of cigarettes and some cigarette butts located inside. Officer Yardly did not examine the vehicle again until May 9, 1984, some two months later.

At some point between February 26, the date of impoundment, and May 9, some members of appellant's family were al-lowed access to the vehicle. The record does not reveal whether or not this entry was supervised. On May 9, Officer Yardly returned to the vehicle and removed two Salem Light 100 cigarette butts from the ashtray, noticing that the two cartons of cigarettes which he had seen earlier were no longer there. The State entered the cigarette butts into evidence over appellant's timely objection.

"The purpose of the chain-of-custody rule is to ensure that the physical evidence against the accused has not been tampered with or altered." *Nelson v. State*, 687 P.2d 744, 746 (Okl.Cr.1984). However, a break in the chain of custody does not automatically result in the exclusion of evidence: "[I]f there is only the bare speculation that tampering could have occurred, it is proper to admit evidence and let what doubt there may be go to its weight." *Brown v. State*, 518 P.2d 898, 901 (Okl.Cr.1973); *Hays v. State*, 617 P.2d 223, 228 (Okl.Cr.1980). In the case at bar, the chain of custody was admittedly broken when members of appellant's family entered the vehicle.

Appellant argues that the Salem Light 100 cigarette butts were improperly entered into evidence as proof that he had stolen the Salem Light 100 cigarettes from the Circle K store. Officer Yardly did not notice the brand of the cigarette butts which he saw during his initial investigation of the vehicle on February 26. This, coupled with the fact that members of appellant's family were allowed to enter the car and were thus given an opportunity to place Salem Light 100 cigarette butts in the ashtray, *could* support a finding that the cigarette butts admitted into evidence were not necessarily the same ones located in the car immediately after appellant's arrest.

While we do not condone police procedures that allow people unsupervised entry into impounded property which may contain crucial evidence, we believe there was only "bare speculation" that the individuals who were given access to appellant's car actually tampered with the contents of the ashtray. Furthermore, the cigarette butts presented at trial were not the only links between appellant and the robbery: Officer

Yardly testified that he found cartons of Salem Light 100's in the car shortly after appellant's arrest (Tr. 82); and, Officer Custer testified that upon apprehending appellant, he found over $200.00 in a sack in his pocket. (Tr. 71). We conclude that the judge properly admitted the cigarette butts, with any doubt as to their authenticity going to the weight of the evidence. *See Brown*, 518 P.2d at 901. Appellant's third assignment of error is therefore denied.

Finding no error, judgment and sentence is AFFIRMED.

BUSSEY and PARKS, JJ., concur.