Richard Leon TEEMAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–531.

Court of Criminal Appeals of Oklahoma.

June 3, 1983.

Bill Hall, Pawhuska, for appellant.

Jan Eric Cartwright, Atty. Gen., Dena L. Bates, Asst. Atty. Gen., for appellee.

OPINION

BRETT, Judge:

Richard Leon Teeman was convicted of Larceny of Domestic Animals pursuant to 21 O.S.Supp.1974, § 1716 now 21 O.S.1981, § 1716 in Osage County District Court Case No. 79–31. He was sentenced to three (3) years' imprisonment with the final eighteen (18) months suspended, and appeals.

On March 6, 1979, Ted Mashburn, a rancher in Fairfax, Oklahoma, reported to Mr. George Wayman, sheriff of Osage County, that eleven young calves, described as black baldies and black motleys, were missing from the pasture where they had been grazing. Two days later Sheriff Way-

man received a telephone call from an informant that the appellant, Mr. Teeman, had some calves, similar to those missing from the Mashburn pasture, in his possession. The caller further stated that the cows had been bought by Mr. Teeman at Bristow or Hominy.

As a result of this telephone conversation, Sheriff Wayman instructed his deputies to check the Bristow sale barn and the Tulsa stockyards for any evidence of such a sale. When no evidence of such a sale was found, Sheriff Wayman instructed Deputy Don Skinner and Deputy Barnard to go to the appellant's ranch to "find out about some calves that he was supposed to have and see if he had a receipt for them."

As the two deputies drove up the private dirt road leading to the Teeman house, they observed eleven calves located in pens directly adjacent to the dirt road, approximately one-half block from the Teeman house. They then proceeded to the City of Fairfax where they were told by Mr. Teeman that he had bought the calves through a cattle buyer at the Bristow Sale Barn; that he had had them for some time; that he did not have a bill of sale for them, but that he had a cancelled check still in the bank in Pawhuska and that he paid one hundred thirty-seven dollars and fifty cents for the calves. The deputies then returned to the pens and photographed the calves.

The Sheriff and Mr. Teeman then arrived on the property. Sheriff Wayman requested that the calves be removed to Mashburn's property to determine if they would "mammy-up" with Mashburn's mother cows but Mr. Teeman refused. Thereupon, Mr. Teeman was put under arrest.

Deputy Barnard and Mashburn then returned to the pens where Mashburn made a tentative identification, but stated he ". . . couldn't say they were mine until they mammyed-up." The three officers and Mashburn and his son then transported twelve of the cattle to the Mashburn ranch. Eight "mammyed-up" to the mother cows that evening. One more calf was picked up the next day and all but two of the thirteen calves taken "mammyed-up" to the mother cows. Those two calves were returned.

Four assignments of error are asserted on appeal, but it is necessary for this Court to consider only the first proposition; that the trial court erred in overruling the appellant's motion to suppress the evidence as the result of an unconstitutional search and seizure. The appellant contends that the original entry onto his property by Deputies Skinner and Barnard constituted the illegal search and seizure. The Deputies were directed by Sheriff Wayman to proceed to Mr. Teeman's residence in order to see ". . . if there were eleven black baldie calves in a pen next to the road that goes to Richard's house . . ." Further, Deputy Skinner testified that his understanding, when directed by the Sheriff to proceed to the Teeman ranch, was that somebody needed to take a look at those calves in the pen. Both deputies had been there before and knew they would drive past the pens as they proceeded to Mr. Teeman's house. The State even stipulated to evidence showing the pens were located on private property.

The trial court, when ruling upon the renewed motions to suppress at the beginning of trial, ruled that the observations of the officers during the first entry fell within the "open view" doctrine. The State argues in its brief that not only does this entry fall within the "plain view" doctrine, but that the area where the calves were located was outside of the "curtilage area" and therefore not entitled to protection against unreasonable search and seizure.

We are of the opinion that neither of these theories justified a warrantless search with resulting seizure of the cattle, including two that were later returned. We therefore find that this appellant's constitutional rights against unreasonable searches and seizures, as set forth in Article 2, § 30 of the Oklahoma Constitution and the Fourth Amendment to the U.S. Constitution have been violated.

■ First, as to the argument that the area where the calves were located was within the curtilage and therefore subject to Fourth Amendment protection:

"The curtilage includes all outbuildings used in connection with a residence, such as garages, sheds, barns, yards and lots connected with and in close vicinity of the residence, but open pasture and wooded area beyond fenced residential property does not constitute part of curtilage. *Hunsucker v. State,* 475 P.2d 618 (Okl.Cr. App.1970)." *Luman v. State,* 629 P.2d 1275 (Okl.Cr.1981).

The factors utilized in determining the "curtilage area" include: (1) the proximity or annexation to the dwelling; (2) the inclusion in the general enclosure surrounding the dwelling; and, (3) the use and enjoyment as an adjunct to the domestic economy of the family. Applying these criteria to the facts in the present case, we find that the calves were located within the area designated as curtilage and therefore subject to protection from warrantless searches. *Brinlee v. State,* 403 P.2d 253 (Okl.Cr.1965).

We have often stated that there are three requirements for a warrantless "plain view" seizure: 1) it must be immediately apparent that the object is evidence of a crime, *Kinsey v. State,* 602 P.2d 240 (Okl. Cr.1979); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); 2) the officer must have a prior justification for his presence and a lawful right to be there, *Clayton v. State,* 555 P.2d 1310 (Okl.Cr.1976); and, 3) the discovery of the evidence must be inadvertent, *Abbott v. State,* 565 P.2d 691 (Okl.Cr.1977). *Tucker v. State,* 620 P.2d 1314 (Okl.Cr.1980). Only the first requirement for a warrantless "plain view" seizure was met in the present case. There was no prior justification for the presence of the deputies; rather, they were there strictly at the request of the Sheriff to check to see if the missing calves were there. Secondly, the discovery of the evidence was not inadvertent. The Sheriff and deputies had prior knowledge that the missing calves were located on the property.

Neither did the exigencies of the situation make it imperative that the officers search and seize the property without taking the time to obtain a warrant. The U.S. Supreme Court stated in *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948) that delay is not a sufficient reason to conduct a warrantless search of permanent premises, where there is no suspect attempting to flee and no danger of destruction or removal of contraband. It is apparent that no emergency existed because before sending his deputies to the Teeman property, Sheriff Wayman sent Deputy Barnard to the Bristow Sale Barn and Deputy Taylor to the Tulsa stockyards. A search warrant could have been obtained during this time to be used in the event no evidence of the sale was found.

Secondly, a search warrant could have been obtained after the first entry of the deputies upon the Teeman property. Apparently no emergency existed after this first observation because the deputies did not even bother to remain at the Teeman property, but left to go to Fairfax. Again, after the arrest of Mr. Teeman a search warrant could have been secured, however again the officers chose to abandon the premises entirely before bringing Mashburn to view and recover the calves. The State has not carried the burden of showing that the circumstances of the situation fell within these exceptions to the warrant requirement. *Blackburn v. State,* 575 P.2d 638 (Okl.Cr.1978).

The trial court erred when it failed to sustain the appellant's motion to suppress and for the reasons set out above the case is REVERSED with instructions to Dismiss.

CORNISH, J., concurs.

BUSSEY, P.J., dissents.