John McShell NELSON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-82-636.

Court of Criminal Appeals of Oklahoma.

Aug. 21, 1984.

Opio Toure, Asst. Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

On appeal from his conviction of Carrying a Firearm, After Former Conviction of a Felony, Case No. CRF–82–496, and sentence of two (2) years imprisonment from the District Court of Oklahoma County, Oklahoma, the appellant, John McShell Nelson, hereinafter referred to as defendant, raises three assignments of error. The facts of the case are as follows:

Briefly, on the evening of January 28, 1982, Officer Caldwell, in response to a call, went to a beauty salon with a two-man back-up unit. Officer Caldwell looked in the front window of the shop, and saw defendant sitting in a chair. Defendant saw the officer, and proceeded to run out the back door. The back-up officers, Shoals and Hull, were at the back entrance, and saw defendant push open the door with some shiny object that the officers believed to be a gun. The officers instructed the defendant to halt and lay face down on the ground, which the defendant did. Hull handcuffed the defendant, and upon helping the defendant to his feet, found a gun underneath him. Defendant testified that he had no knowledge of the pistol, and thought at the time that he was being arrested for possession of marijuana.

### I.

In his first assignment of error, defendant complains the State did not prove an essential element of the crime charged. The defendant contends that an element of the offense, Carrying a Firearm, is the capability of the weapon to discharge a lethal projectile. We agree. This Court has held implicitly, if not expressly, that "Pistol" as used in the statute, means any firearm *capable of discharging a projectile,* ... and, as such, this becomes an element of the offense, Carrying a Firearm. *Thompson v. State,* 488 P.2d 944, 947 (Okl.Cr.1971), reversed in part on other grounds; *Dolph v. State,* 520 P.2d 378, 380 (Okl.Cr.1974); *Dilworth v. State,* 611 P.2d 256 (Okl.Cr.1980); *Prock v. State,* 542 P.2d 522 (Okl.Cr.1975). However, we find there

was sufficient evidence to show the gun was capable of firing a lethal projectile. See *Jennings v. State,* 643 P.2d 643 (Okl. Cr.1982). The pistol was introduced into evidence; an officer testified the gun was loaded; the defendant was seen with the gun in his hand; and he was fleeing when he saw the officer. The jury was instructed on the definition of "Pistol," and we find there was sufficient evidence for the jury to reasonably believe the pistol was capable of discharging a projectile. Consequently, this assignment of error is meritless.

### II.

In his second assignment of error, defendant contends that Officers Shoals and Hull injected evidentiary harpoons, thereby denying defendant a fair trial. Both officers stated they had been called in regard to an armed robbery.

The following is quoted from the Direct Examination of Officer Shoal in the trial court transcript:

"Q Okay. Specifically, what kind of location was this, and would you describe for the jury the location and type of business, if any, or the dwelling that was there?

A The location was in the 1900 block of N.W. 23rd, located on the south side of the street, approximately two doors down from the end of the block, which is a beauty parlor. We had received information from Officer Caldwell that a suspect was there from an armed robbery of a night before."

Officer Hull, in the Direct Examination of the trial court transcript, testifies:

"Q Now, upon your arrival, what was the first thing that you did?

A We were called by Unit 144 to meet him at 23rd and Eastern at the Humpty Dumpty parking lot in reference to a call that he had, he needed assistance, involving a strong armed robbery at that time."

This Court has said it will not tolerate volunteered statements by experienced police officers which are interjected solely to prejudice the accused. *Sandersfield v. State*, 461 P.2d 1019 (Okl.Cr.1969). However, we do not feel that the disputed remarks fall within the purview of this rule.

Although the witnesses were instructed by the prosecutor not to mention any evidence of other crimes, there was no evidence that these responses were willfully injected rather than inadvertently, *Odum v. State*, 651 P.2d 703 (Okl.Cr.1982), that those answers were so unresponsive as to be "voluntary statements." *Bruner v. State*, 612 P.2d 1375 (Okl.Cr.1980). As such, we cannot say these responses were evidentiary harpoons.

In addition, these statements were not evidence of other crimes, as there was no implication the defendant was involved. This Court has stated on numerous occasions that evidence of other crimes which is obvious only to defense counsel is not inadmissible. *Byrne v. State*, 620 P.2d 1328 (Okl.Cr.1980). Accordingly, this assignment of error is without merit.

### III.

 In his third allegation of error, defendant complains the trial court improperly admitted into evidence the firearm because the chain of custody was not established. Defendant contends there was conflicting testimony over which officer picked up the gun, and that no officer could state how the firearm was transported to the police station property room, or who retained the firearm. Furthermore, there were discrepancies in the identification of the firearm.

We agree with the State's position that the evidence, because of its character, was sufficiently identified to permit its introduction; and that a rational trier of fact could reasonably conclude the firearm introduced was the gun found on the defendant. *Hays v. State*, 617 P.2d 223 (Okl.Cr. 1980).

The purpose of the chain-of-custody rule is to ensure that the physical evidence against the accused has not been tampered with or altered. *Contu v. State*, 553 P.2d 1000 (Okl.Cr.1975). However, this burden does not require that all possibility of altercation, however slight, must be negated by the party offering the evidence. *Trantham v. State*, 508 P.2d 1104 (Okl.Cr.1973). There must be sufficient evidence of the chain of custody to reduce the mere speculation that tampering occurred. *Contu v. State*, supra. In the case at bar, defendant does not allege any altercation or tampering occurred. He only complains there was a break in the chain of custody, and as a result, the gun automatically should have been ruled inadmissible. We disagree.

Furthermore, cases have distinguished the need for strict application of the chain of custody rule in contraband cases from evidence which is not susceptible to tampering and altercation. See *Hays v. State*, supra; *Ervin v. State*, 580 P.2d 1002 (Okl. Cr.1978); *Brown v. State*, 518 P.2d 898 (Okl.Cr.1974).

 Finally, any discrepancies in the identification of the firearm at trial go to the weight and credibility of the evidence rather than admissibility. *Hauschildt v. State*, 554 P.2d 77 (Okl.Cr.1976); *Contu v. State*, supra. As such, we find this assignment of error meritless.

Accordingly, for the foregoing reasons, the judgment and sentence is AFFIRMED.

BRETT, J., concurs.

BUSSEY, P.J., concurs in results.