James **GRIDER** and Georgia Grider, Appellants,

v.

The **STATE** of Oklahoma, Appellee.

No. F–86–236.

Court of Criminal Appeals of Oklahoma.

Sept. 28, 1987.

Kenneth W. Lackey, Lackey & Wendel, Inc., Eufaula, for appellants.

Michael C. Turpen, Atty. Gen., Jean M. LeBlanc, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellants, James A. Grider and Georgia Grider, husband and wife, were jointly tried without a jury, in the District Court of McIntosh County, Oklahoma, in Case Nos. CRF–84–87 and CRF–84–88. The Honorable J.M. LeMasters, Jr., presided. Case No. CRF–84–87 was for the offense of Unlawful Cultivation of Marijuana in violation of 63 O.S.1981, § 2–509(1). CRF–84–88 was for the offense of Unlawful Possession of Marijuana With Intent to Distribute in violation of 63 O.S.1981, § 2–401 (B–2). In addition, appellant James A. Grider was charged with After Former Conviction of a Felony. He had been formerly convicted in the United States District Court, Eastern District of Oklahoma, in Case No. 78–95 Criminal, for the offense of Unlawful Distribution of Marijuana.

Appellant James A. Grider was found guilty After Former Conviction of a Felony in both cases and was sentenced to serve ten (10) years' imprisonment on each charge. For the offense in CRF–84–88, for the Unlawful Possession of Marijuana With Intent to Distribute, he was also assessed a fine of Five Thousand Dollars ($5,000.00). The imprisonment sentence in CRF–84–88 was provided to run consecutively to the sentence imposed in CRF–84–87, as to James Grider.

Appellant, Georgia Grider, was found guilty on both charges and was sentenced to serve two (2) years' imprisonment and a fine of One Thousand Dollars ($1,000.00) on each charge, with the provisions that the two sentences run concurrently. Both appellants were allowed to remain free on bail pending this appeal. The original record for Georgia Grider fails to contain a copy of the Judgments and Sentences for each case and is subject to dismissal because of that failure. However, insofar as the transcript of March 4, 1986, contains the imposition of Judgment and Sentence for Georgia Grider, the appeal has been considered on the merits.

On September 21, 1984, the McIntosh County Sheriff's Department was conducting an aerial surveillance along the Canadian River for marijuana crops. Pursuant to instructions by the Sheriff's Department, the pilot of the plane used in the surveillance searched an area around the river and subsequently observed a marijuana patch in an area behind the appellant's barn.

Upon receiving directions regarding the location of the marijuana, the Sheriff and four deputies proceeded to the appellant's residence. The deputies parked their cars on the public road in front of the house. The deputies testified that from this point they could see marijuana growing behind appellants' barn. Conflicting testimony indicated that the barn was between 75 to 125 yards behind the house.

A deputy went to the home and knocked on the door. Receiving no answer, the deputy proceeded to check for people in surrounding buildings. Finding no one at home, the deputy returned to his patrol car. Another deputy returned to Eufaula to obtain a search warrant. Upon returning to appellants' residence with the warrant, a search was conducted of the area behind the barn. In this area, the deputies found rows of growing marijuana. Approximately 169 marijuana plants were found. The officers then checked inside the barn and found stripped stalks of marijuana and brown paper sacks containing marijuana. Appellant, Mr. Grider, was taken into custody later that day.

At trial, the magistrate who had issued the search warrant, found appellants' motion to suppress well taken and sustained it. The search was determined to be invalid because the warrant was not made under oath or affirmation pursuant to Article 2 § 30 of the Oklahoma Constitution. On a Rule Six Appeal, the District Judge overruled the motion to suppress, finding that the marijuana was observed growing in an open field, relying on *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

■ Appellants' first assignment of error contends that the marijuana found behind the barn was within the curtilage of their home, and thus, required the exclusion of the marijuana at trial.

We find *United States v. Dunn*, — U.S. ——, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), to be determinative of this issue. In *Dunn*, Drug Enforcement Administration agents discovered that one Carpenter had bought large quantities of chemicals and equipment used to make controlled substances. The agents placed tracking beepers in some of the equipment and these beepers led the agents to Carpenter's truck, which was parked on his ranch. Aerial photographs of the ranch showed the truck backed up to a barn behind the ranch house. The ranch was completely encircled by a perimeter fence, and contained several interior barbed wire fences, including one around the house approximately 60 yards from the barn. A wooden fence enclosed the front of the barn, which had an open overhang and locked waist-high gates. Without a warrant, officers crossed the perimeter fences, several of the barbed wire fences, and the wooden fence in front of the barn. They did not enter the barn but stopped at the locked gate and shined a flashlight inside, observing what they considered to be a drug laboratory. They obtained a search warrant and executed it, arresting Dunn and seizing evidence.

After the United States District Court for the Western District of Texas, denied Carpenter's and Dunn's motion to suppress all evidence seized pursuant to the warrant, Carpenter and Dunn were convicted of conspiracy to manufacture controlled substances and related offenses. However, the United States Court of Appeals, 5th Circuit, reversed, holding that the barn was within the residence's curtilage and therefore within the Fourth Amendment's protective ambit.

The United States Supreme Court reversed, holding that the area near the barn was not within the curtilage of the house for Fourth Amendment purposes. The Supreme Court identified the central component of the curtilage inquiry as whether the area "harbors the intimate activity as-

sociated with the sanctity of a man's home and the privacies of life." *Id.* at ——, 107 S.Ct. at 1139. The Supreme Court stated that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and finally, the steps taken by the resident to protect the area from observation by people passing by.

Applying these factors to appellants' barn and to the area immediately surrounding it, we have little difficulty in concluding that the barn area lay outside the curtilage of the home.

First, the record discloses that the barn was located anywhere from 75 to 125 yards from appellants' home. Standing in isolation, this substantial distance supports no inference that the barn should be treated as an adjunct of the home.

Second, although the barn, which was in bad disrepair, was fenced in and a distinct portion of property, it was quite separate from appellants' home. Appellants' brief admits that there were regularly traveled paths between the barn and the home.

Third, although appellants did attempt a subterfuge by growing some garden vegetables, the main function of the garden behind the barn was to grow marijuana crops.

Fourth, the record reveals that the officers could see the marijuana crops from their vehicles parked on the public road in front of appellants' home. Appellants did little to protect the barn area from public observation.

Accordingly, we find that the marijuana was growing in an area which was outside the curtilage of appellants' home and was in an open field not covered by the Fourth Amendment. We find no error. We are not unmindful of this Court's decision in *Teeman v. State,* 664 P.2d 1071 (Okl.Cr. 1983). However, *Oliver* was decided subsequent to this Court's decision in *Teeman,* and is supported further by later decisions of the United States Supreme Court. For discussion of the Supreme Court's develop-ment of "Open Fields Doctrine" see 80 L.Ed.2d 860. We therefore overrule *Teeman,* insofar as it conflicts with this decision.

In appellants' second assignment of error, they contend that the State failed to prove a proper chain of custody for State's Exhibit No. 9, which was a sealed envelope containing the samples of marijuana. Specifically, appellants assert that the trial court should not have admitted the exhibit or the testimony of Agent Belyeu regarding the tests he performed on the samples.

At trial, Gerald Belyeu, a forensic chemist with the Oklahoma State Bureau of Investigation, testified that on September 27, 1984, Deputy Al Cheek gave him an envelope containing samples of a green leafy substance taken from the appellants' property. Upon performing tests on the samples, Mr. Belyeu determined that the substance was marijuana.

■ It is a well established rule of law that the party offering demonstrative evidence must show, to the satisfaction of the trial court, that the circumstances of its custody provide reasonable certainty that there has been no alteration of or tampering with the evidence. However, this burden is not so strict that all possibility of alteration, no matter how slight, must be negated by the party offering such evidence. *Nelson v. State,* 687 P.2d 744 (Okl. Cr.1984). We conclude that in viewing the evidence of the chain of custody, only resorting to speculation, would permit us to conclude that the evidence was altered or tampered. We do not engage in that speculation and hold that the evidence was properly admitted upon proper predicate. What doubt there may have been, goes to its weight. This assignment is without merit.

In their final assignment of error, appellants allege that being punished for Count I, Unlawful Cultivation of Marijuana, and for Count II, Unlawful Possession of Marijuana With Intent to Distribute, resulted in excessive sentences being imposed because the crimes were actually a single transaction.

■ The double jeopardy clauses found in the United States and Oklahoma Constitutions provide that no person shall be twice put in jeopardy of life or liberty for the same offense. However, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. *Stohler v. State Ex Rel. Lamm*, 696 P.2d 1038 (Okl.Cr.1985) (Parks dissents).

■ The crimes of Unlawful Cultivation of Marijuana and Unlawful Possession of Marijuana With Intent to Distribute each have at least one element that the other lacks. Unlawful Cultivation of Marijuana requires cultivation or production or to knowingly permit the cultivation, production or wild growing on any lands owned or controlled by such person of any species of plants from which controlled dangerous substances may be derived. Unlawful Possession of Marijuana With Intent to Distribute requires an intent to manufacture, distribute, or dispense a controlled dangerous substance. Clearly, these are two separate offenses, the prosecution of which is not barred by Double Jeopardy.

Furthermore, we have consistently held that we will not modify a sentence unless we can conscientiously say that under all the facts and circumstances, the sentence is so excessive as to shock the conscience of this Court. *Lovelace v. State*, 715 P.2d 481 (Okl.Cr.1986). The sentences given were well within the range established by the Legislature for the offenses. The evidence of guilt was overwhelming, and we cannot say the sentences imposed shock the conscience of this Court.

The judgments and sentences appealed from are AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, Specially Concurring:

I write separately to stress that this opinion in no way binds this Court in its interpretation of Art. II, § 30, of the Oklahoma Constitution. As Justice Kauger recently observed in *Turner v. City of Lawton*, 733 P.2d 375, 381 (Okla.1986), this amendment can act as a "double-barrelled source of protection" to safeguard Oklahomans. This, Justice Kauger observed, stems from the United States Supreme Court's "explicit acknowledgement of the right of state courts, as the final interpreters of state law to impose higher standards on searches and seizures than those required by the federal constitution," even if the two provisions are similar. However, the circumstances of this case present no conflict, regardless of which provision is being applied. The barn behind which the marijuana was being grown was in such a state of disrepair that the plants could be seen from the road. This building in no way could be interpreted as being curtilage, an area that "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *United States v. Dunn*, — U.S. —, —, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). Accordingly, I concur.