Roy K. HUNNICUTT, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–309.

Court of Criminal Appeals of Oklahoma.

May 5, 1988.

Thomas G. Smith, Jr., Sp. Counsel, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Wellon B.

Poe, Jr., Legal Intern, Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Appellant, Roy K. Hunnicutt, was tried by jury in Muskogee County District Court, Case No. CRF-83-706, and convicted of two counts of Attempting to Knowingly Conceal Stolen Property (21 O.S.1981, §§ 42, 1713) (Counts I and II) and two counts of Felonious Possession of a Firearm (21 O.S.1981, § 1283) (Counts III and IV), before the Honorable James E. Edmondson, District Judge. The jury set punishment at three (3) years imprisonment on Counts I and II and two (2) years imprisonment for Counts III and IV. Judgment and sentence was imposed in accordance with the jury's verdict, with the sentences on Counts I and II to be served concurrently, and the sentences on Counts III and IV also to be served concurrently. Counts III and IV were ordered to be served consecutively with Counts I and II. We affirm in part and reverse in part.

Dick Huitt, who was associated with the Muskogee County Sheriff's Department at the time of the offenses, was contacted by an informant who told him that appellant had purchased stolen property on several occasions. Huitt then obtained an undercover officer from the Muskogee Police Department and set up a meeting time with appellant. Huitt and the undercover officer obtained two pistols from the evidence room of the sheriff's office to be used in the sale to appellant. A second call was placed to appellant, who told the men to bring the pistols. The undercover officer, wearing a transmitting device, accompanied the informant to the house in Warner where appellant was staying on December 12, 1983. Huitt and another officer re-

mained in a vehicle nearby, listening to the transaction. The undercover officer showed the two pistols to appellant, who inspected them amd asked them where they came from, explaining that he did not like to sell items in the same area from which they were taken. Appellant told the officer he wanted to buy the weapons but had no money at that time. Appellant made a telephone call, then asked the men to return the next night. On December 13, 1983, the men returned and were informed by appellant that he had only eighty ($80) dollars. The undercover officer told appellant that would suffice, "because they were hot pistols." Appellant again asked where the weapons had come from. After appellant paid for the weapons, other officers entered the house and arrested appellant. Appellant denied saying he was interested in purchasing the weapons. He also denied taking possession of the weapons and testified that he told the men he knew someone to whom the men could "hock" the guns. He denied any conversation concerning the guns being stolen. He also admitted that he had been convicted of a felony in 1980. He testified he also knew that he could not have a firearm in his possession while he was on probation.

### I.

Appellant first claims his convictions for attempting to conceal stolen property must be reversed because the State failed to disprove entrapment. It is not entrapment[1] for police to simply furnish a defendant with an opportunity to commit a crime. *Willis v. State,* 706 P.2d 167, 168 (Okla.Crim.App.1985). The jury was properly instructed on entrapment, but rejected it. Where the evidence indicates that entrapment may have occurred, "the issue of whether a defendant has been entrapped is for the jury as part of its function of

---

**1.** The United States Supreme Court recently held an accused is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment even if the accused denies one or more elements of the crime. *Mathews v. United States,* — U.S. —, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). Because an entrapment instruction was given here, there is no violation of

*Mathews.* However, our prior cases, *see Avey v. State,* 723 P.2d 989, 992 (Okla.Crim.App.1986), and *Willis v. State,* 706 P.2d 167, 168 (Okla. Crim.App.1985), relying upon *Neilson v. State,* 639 P.2d 615, 617 (Okla.Crim.App.1981), are overruled to the extent that they conflict with *Mathews* by holding that an accused cannot claim entrapment while denying commission of the offense.

determining the guilt or innocence of the accused," unless it can be decided as a matter of law. *Sherman v. United States,* 356 U.S. 369, 377, 78 S.Ct. 819, 823, 2 L.Ed.2d 848 (1958). *See also* 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 5.2 (1986). Here, there was a sufficient conflict in the testimony to make entrapment a question of fact rather than a question of law. This argument is therefore without merit.

■ Appellant next claims the evidence was insufficient to convict him of attempting to knowingly conceal stolen property. The undercover officer did not tell appellant the guns were stolen, but he did say they were "hot" and would be difficult to resell. Concerning the firearms possession charge, there was conflicting testimony as to whether appellant took possession of the weapons. It is within the province of the jury to resolve conflicts in testimony. *Truelove v. State,* 545 P.2d 1270, 1271 (Okla.Crim.App.1976).

■ Appellant also claims the State failed to prove the pistols were capable of discharging a lethal projectile, citing *Nelson v. State,* 687 P.2d 744 (Okla.Crim.App. 1984). We agree. Here, the only evidence offered by the State to prove this element was that appellant inspected the weapons, said he could get a certain price for them, and reportedly remarked that he would like to keep one of the pistols for himself. When viewed in the light most favorable to the State, we cannot say that a rational trier of fact could have found this essential element of the crime charged beyond a reasonable doubt. *See Spuehler v. State,*

709 P.2d 202, 203–04 (Okla.Crim.App.1985); 21 O.S.1981, § 1289.3. For these reasons, Counts III and IV must be reversed and remanded with instructions to dismiss.[2]

## II.

■ Appellant next claims that, because the weapons were not stolen, it was legally impossible for him to be convicted of attempting to knowingly conceal stolen property. The statute defining "attempt" states that a defendant can be convicted of attempting a crime if he "purposely engages in conduct which would constitute a crime if the attendant circumstances were as he believes them to be." 21 O.S.1981, § 44(a). Such language forecloses the legal impossibility defense, long criticized by many commentators. *See* 2 LaFave, *supra,* at § 6.3. Oklahoma's statutory language is identical with § 5.01(1)(a) of the Model Penal Code, which also rejects the legal impossibility defense. Comments to that section state that the defense

> is unsound in that it seeks to evaluate a mental attitude—'intent' or 'purpose'—not by looking to the actor's mental frame of reference, but to a situation wholly at variance with the actor's beliefs. In so doing, the courts exonerate defendants in situations where attempt liability most certainly should be imposed. In all of these cases the actor's criminal purpose has been clearly demonstrated; he went as far as he could in implementing that purpose; and, as a result, his 'dangerousness' is plainly manifested.

**2.** In his separate opinion, my brother Judge Bussey expresses the view that the State was not required to prove that the pistols in this case were capable of discharging a lethal projectile, relying on the statutory language making it unlawful for a convicted felon to possess an "imitation or homemade pistol...." However, appellant was not charged or tried on the basis of an imitation or homemade pistol, a term not defined by statute. The statutory definition of "pistol" includes the capability of discharging a projectile. 21 O.S.1981, § 1289.3. This requirement is likewise present in the statutory definitions of sawed-off shotgun and rifle. 21 O.S. 1981, §§ 1289.18(A), 1289.4. *See also Oklahoma Uniform Jury Instructions–Criminal*

(OUJI–CR) 630 (1981). The language "or any other dangerous or deadly firearm" limits the coverage of Section 1283 to firearms capable of discharging a projectile able to cause lethal injury. *Thompson v. State,* 488 P.2d 944, 947 (Okla. Crim.App.1971), *overruled on other grounds, Dolph v. State,* 520 P.2d 378, 380–81 (Okla.Crim. App.1974). Thus, a so-called "imitation" or "homemade" pistol not capable of discharging a lethal projectile does not fall within the ambit of Section 1283. *Id.* In the absence of a legislative amendment indicating an intent to change this Court's construction of Section 1283, our prior cases settle the question. *See Irwin v. Irwin,* 433 P.2d 931, 934 (Okla.1965).

Accordingly, we reject appellant's contention.

### III.

■ Appellant next claims that the trial court erred in refusing his motion for a lengthy continuance. He claims that because his second court-appointed attorney was appointed only eight days before trial, there was insufficient time for him to prepare. We are not convinced. Appellant admits that the trial court gave his attorney a three-day continuance. He also admits that he failed to file a written motion or attach a written affidavit as required by 12 O.S.1981, § 668. This Court has held that failure to follow this required procedure is fatal to such a claim on appeal. *Henderson v. State*, 695 P.2d 879, 881 (Okla.Crim.App.1985). Unless a procedural failure results in a miscarriage of justice or constitutes a substantial violation of appellant's rights, this Court cannot set aside a verdict. 20 O.S.1981, § 3001.1. Appellant asserts that because a longer continuance was not given, his attorney failed to request a bifurcated trial; failed to demur on the basis that no proof was offered to show that the weapons were capable of discharging a lethal projectile; failed to request an instruction on the defense theory of intent and knowledge; and told the jury during voir dire that appellant's brother was in prison for murder. We have reviewed these contentions and find them to be without merit. However, appellant also asserts that his attorney failed to raise a double jeopardy claim as a result of the short continuance. We cannot say that the lack of a continuance was a contributing factor, but will address the double jeopardy claim separately.

### IV.

■ Appellant claims that he was unlawfully convicted twice for one act of attempting to conceal stolen property. He claims that such a conviction violates the prohibitions against double jeopardy of the fifth amendment and Art. II, § 21 of the Oklahoma Constitution. Such a claim is so fundamental that it can be raised by this Court, even if it was not adequately preserved on appeal. *Gentry v. State*, 562 P.2d 1170, 1175 (Okla.Crim.App.1977).

On numerous occasions, this Court has addressed the problem that surfaces when one transaction gives rise to two separate and distinct charges. Here, we do not address the problems that arise when all offenses are not joined at one trial, nor do we address the problems associated with successive prosecutions. We are concerned *only* with the situation that arises when a defendant is charged with *two* counts of the *same crime* arising out of *one* incident. We hold that, under the circumstances of this case, it was improper.

■ The fifth amendment guarantee against double jeopardy protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Courts have generally used two tests in deciding whether a conviction violates the multiple punishment component of the double jeopardy prohibition. Under the "same evidence test," the question to ask is "whether each of the offenses charged requires proof of an additional fact that is not necessary to the other." *Johnson v. State*, 611 P.2d 1137, 1140 (Okla. Crim.App.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 955, 67 L.Ed.2d 120 (1981), *rehearing denied*, 450 U.S. 1026, 101 S.Ct. 1734, 68 L.Ed.2d 221 (1981). Therefore, an act can violate more than one statute if each statute requires proof of an additional fact that the other does not, and multiple punishments are not prohibited, even though each offense may arise from the same act or criminal episode. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932). Under the "same transaction test," one must determine "whether the offenses charged were parts of the same criminal act, occurrence, episode or transaction" and, if so, multiple punishments should be barred by the double jeopardy clause. *Johnson*, 611 P.2d at 1141.

When the pros and cons of each test were considered in *Johnson*, it was noted that just "because we treat the double jeop-

ardy issue in one case by using one test [does not mean that] this Court will not apply the other test in appropriate cases." *Id.* at 1144. The Court made clear its purpose when it said:

> [W]e merely follow the collective wisdom of this Court's prior decisions and elect the course which allows this Court to utilize the necessary tools to accomplish the task before it. In taking this course, we do nothing more than elevate the distinct purposes of the Double Jeopardy Doctrine to the equal dignity and reverence each [test] deserves.

*Id.* Based on the foregoing, we examine appellant's situation to determine which test best serves the underlying purposes of the double jeopardy prohibition against multiple punishments for the same offense.

The concept of double jeopardy has been used as a tool of statutory construction to determine "what [the legislature] has made the allowable unit of prosecution." *United States v. Universal C.I.T. Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed.2d 260 (1952). More recently, the Supreme Court held that the "Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). The Court noted that its underlying assumption was that a legislative body ordinarily does not intend to punish the same offense under two different statutes, and such punishments should not be authorized "in the absence of a clear indication of contrary legislative intent." *Id.* (citing *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980)). That is similar to what appellant is arguing here. He argues both that he should not be prosecuted for two crimes arising from one act; and that he should not be charged with the same crime two times as a result of one act.

As we have dismissed the charges of felonious possession of a weapon, we need not address the problems that occur when one act leads to charges under different criminal statutes. The question remains, however, whether appellant can be convicted of *two* counts of *one* offense arising out of the *same* transaction. The answer depends on whether one determines that the "criminal episode involves separate and distinct offenses, consisting of different elements or dissimilar proof." *Weatherly v. State,* 733 P.2d 1331, 1336 (Okla.Crim.App. 1987). *See Starnes v. State,* 507 P.2d 920, 921–22 (Okla.Crim.App.1973). Offenses are distinct and separate if they "are not mere means to some other ultimate objective, nor are they offenses included in some other offense, nor are they merely different incidents or facets of some primary offense." *Weatherly,* 733 P.2d at 1336–37 (citing *Clay v. State,* 593 P.2d 509, 510 (Okla.Crim.App.1979)).

Here, appellant paid the undercover officer $80.00 and was given a sack containing two pistols. The State prosecuted appellant on two charges of attempting to conceal stolen property simply because law enforcement officers had taken two pistols out of the evidence room to use in the transaction. Presumably, had five pistols been involved, appellant would have been charged with five counts of the crime; had there been twenty weapons in the sack, appellant would have been charged with 20 counts of each crime. We find nothing in our statutes to indicate our legislature intended such a result. *See* 21 O.S.1981, § 11.

In *Weatherly,* 733 P.2d at 1337, we upheld the convictions based on the circumstances surrounding the case, but noted that such might not always be the case:

> The prosecution asserts, however, that each of the blows delivered by the defendant may serve as the basis for a separate offense.... According to the argument, the defendant could have been convicted of and concurrently sentenced for numerous counts of [the same crime]. Such suggestion is inane. Only a single defendant and a single victim were involved. The offenses at issue, ... arose from a series of blows to the victim which were not separated by an [sic] significant amount of time.

*Weatherly,* 733 P.2d at 1337 (citation omitted).

It is because of cases such as appellant's that the *Johnson* Court refused to adopt one "test" to the exclusion of the other. To allow conviction of more than one count of the same crime in circumstances such as this would run "contrary ... to the nature and genius of our government." *Ex Parte Lange,* 18 Wall. 163, 172, 21 L.Ed. 872 (1874). In the words of the Tenth Circuit:

> [T]he same evidence test must be applied with some discrimination. Merely because one element of a single criminal act embraces two persons or things, a prosecutor may not carve out two offenses by charging the several elements of the single offense in different counts and designating only one of the persons or things in one count and designating only the other person or thing in the other count.

*Robinson v. United States,* 143 F.2d 276, 277 (10th Cir.1944), *modified on other grounds,* 147 F.2d 915 (10th Cir.1945).

The same reasoning was used by Judge Brett writing for a unanimous Court in *Gentry v. State,* 562 P.2d 1170 (Okla.Crim. App.1977), when two of three convictions for receiving stolen property were reversed. There, the evidence showed that three guns from three separate thefts were "bargained for and sold as a unit, and ... a single price was paid for the entire unit." The Court said that, even though three separate thefts were involved, only one sale of stolen goods to the defendant was shown. "Accordingly, only one offense was proven, and the verdicts of guilty on two of the three counts were not supported by the evidence." *Id.* at 1175. We find the *Gentry* rationale controlling here.

Nor does this holding run contrary to the reasoning in *Hill v. State,* 511 P.2d 604 (Okla.Crim.App.1973), where this Court said that double jeopardy was not intended as "a method of carte blanche extending to the accused the prerogative of committing as many offenses as he desired within the same transaction with the protective shield of permitting only one prosecution to arise and be pursued from that transaction." *Id.*

at 606. We are simply saying that a prosecutor cannot stack multiple charges in situations such as this, to "offer[ ] the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence." *Cichos v. Indiana,* 385 U.S. 76, 81, 87 S.Ct. 271, 273, 17 L.Ed.2d 175 (1966) (Fortas, J., dissenting from dismissal of certiorari).

Therefore, Counts II, III and IV are REVERSED and REMANDED with instructions to DISMISS, and Count I is AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in part/dissents in part.

BUSSEY, Judge, specially concurring in part and dissenting in part:

I must dissent to the reversal of Counts III and IV. Title 21 O.S.1981, § 1283 provides that:

> It shall be unlawful for any person having previously been convicted of any felony in any court of a state or the United States to have in his possession or under his immediate control, or in any vehicle which he is operating, or in which he is riding as a passenger, any pistol, *imitation or homemade pistol,* machine gun, sawed-off shotgun or rifle, or any other dangerous or deadly firearm which could be easily concealed on the person, in personal effects or in an automobile. (Emphasis Added)

Under this statute, I am of the opinion, that the State is not required to prove that the pistols were capable of discharging a lethal projective. The statute clearly states that even possessing an "imitation or homemade pistol" is unlawful for a convicted felon. Clearly, an imitation pistol will not fire a lethal projectile. Moreover, even in *Nelson v. State,* 687 P.2d 744 (Okl. Cr.1984), cited by the majority, Judge Parks, in his opinion, did not require the State to prove by direct evidence that the pistol was capable of firing a lethal projectile but allowed it to be proven by the surrounding circumstances. I would af-

firm the judgments and sentences in Counts III and IV.

While I agree that Count II should be reversed, I limit my concurrence to the specific facts of this case where the two pistols from the police evidence room were sold to the defendant for one price, in one unit, by two police officers.