Wendell Lamon **LOCKE**, Appellant,

v.

**STATE** of Oklahoma, Appellee.

No. F–95–1165.

Court of Criminal Appeals of Oklahoma.

Aug. 1, 1997.

David Henry, Oklahoma City, for defendant at trial.

Lou Keel, Mark Pate, Assistant District Attorneys, Oklahoma City, for the State at trial.

Nancy Walker–Johnson, Oklahoma Indigent Defense System, Norman, for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, A. Diane Slayton, Assistant Attorney General, Oklahoma City, for appellee on appeal.

## OPINION

LANE, JUDGE:

Appellant, Wendell Lamon Locke, was convicted of First Degree Murder, 21 O.S.1991, § 701.7, and two counts of Use of a Vehicle to Facilitate the Intentional Discharge of a Firearm, 21 O.S.Supp.1992, § 652, after a jury trial in the District Court of Oklahoma County, Case Number CF–94–4538, before the Honorable Major R. Wilson, District Judge. The jury recommended Appellant be sentenced to life without parole for murder, and twenty years' imprisonment for each of the "drive-by" shooting offenses.[1] The trial court sentenced accordingly, ordering that the sentences run concurrently. From this judgment and sentence Appellant has perfected this appeal.

Appellant alleges eight propositions of error which he claims entitle him to relief. After thorough consideration of these propositions and the entire record before us on appeal, including the original record, transcripts, and briefs, we have determined that the Judgment and Sentences in count one, Murder in the First Degree, and count two, Using a Vehicle to Facilitate the Intentional Discharge of a Firearm, shall be affirmed and, count three, Using a Vehicle to Facilitate the Intentional Discharge of a Firearm, shall be reversed and remanded with instructions to dismiss.

## FACTS

Sufficient evidence was introduced to convince a jury beyond a reasonable doubt that Appellant, while accompanied by nine other people, mostly gang members, committed the above crimes. On the evening of April 21, 1994, at around 11:00 p.m., as many as forty gunshots were fired from two cars into a house occupied by seven people. The evidence indicated that Appellant fired from fifteen to twenty-six rounds from a M–90 assault rifle. The rest of the shots were fired from handguns used by two others in the group. One of the occupants of the house was killed and two others were injured.

## PROPOSITIONS OF ERROR

 In proposition one, Appellant contends that the trial court erred when it failed to give his requested instruction on the defense of alibi. The requested instruction follows this Court's approved instruction which requires that,

An instruction on the law of alibi should inform the jury that if they entertain a reasonable doubt of the presence of the accused at the time and place where the crime was committed, they should resolve the doubt in favor of the accused and acquit him.

*Cortez v. State,* 415 P.2d 196, 201 (Okl.Cr. 1966); *see also Stuart v. State,* 35 Okl.Cr. 103, 249 P. 159 (1926).

To entitle the defense of alibi to consideration, the evidence must be such as to show that, at the very time of the commission of the crime charged, the accused was at another place so far away or under such circumstances that he could not, with ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof; and, in a criminal prosecution, unless the evidence fills this requirement of the law, no instruction on the subject of alibi is necessary to be given by the trial court.

*Goodwin v. State,* 654 P.2d 643, 644 (Okl.Cr. 1982); *Henderson v. State,* 716 P.2d 691, 693 (Okl.Cr.1986).

 Henry Love testified that he was playing basketball at the Kerr Village Apartments[2] between 4:00 p.m. and midnight on April 21, 1994. He saw Locke there during that time, but he could not recall if Locke left to go anywhere or left to get a gun. Laderick Crenshaw testified that he was at Kerr Village until about 11:30 p.m. and Locke was still there when he left.

These witnesses never testified that Locke was either present at the Apartments at the

---

1. The State sought the death penalty and the jury was instructed on the "great risk of death to more than one person" aggravating circumstance.

2. Formerly named the Oak Grove Apartments.

precise time of the commission of the "drive by" shooting or that his presence was under such circumstances that he could not, with ordinary exertion, have reached the place where the crime was committed.

The State's witnesses testified that the shooting occurred between the times of 11:00 p.m. and 11:15 p.m. on April 21, 1994. There was no evidence presented that it would have taken more than fifteen minutes to get from the shooting to the Kerr Village Apartments. Therefore, Crenshaw could have seen Locke at the apartments when he left at 11:30 p.m., after Locke had returned from the shooting.

We find that the "alibi" evidence in this case was not sufficient for the giving of an alibi instruction. Therefore, we find no error in the trial court's failure to give the requested instruction.

■ In proposition two, Appellant argues that he was denied his constitutional right to a fair trial by the trial court's refusal to instruct on the lesser offense of second degree murder. Appellant's theory of defense was that he did not commit the shooting. Therefore, second degree murder instructions would have been warranted only if the State's evidence supported such instructions.

■ This Court has repeatedly held that an instruction on a lesser included offense need only be given when there is evidence in the record to support such an instruction. *Robedeaux v. State*, 866 P.2d 417, 431 (Okl. Cr.1993); *See also Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986); *Green v. State*, 611 P.2d 262, 266 (Okl.Cr.1980). "It is within the trial court's discretion and responsibility to consider the evidence to determine if such instructions are warranted." *Robedeaux*, 866 P.2d at 431; *Liles v. State*, 702 P.2d 1025 (Okl.Cr.1985).

■ The evidence showed that Locke himself fired at least twenty six rounds from a 7.62 × 39 mm caliber assault rifle into an occupied, wood frame, home. The projectiles struck the house anywhere from floor level up to about shoulder level.[3] The placement of these bullets would indicate that the person shooting at the house intended to strike those inside. The sheer number of rounds fired from this rifle would show malice aforethought and not just a reckless disregard for life. Therefore, the evidence did not support the giving of the lesser included offense instruction.

Appellant alleges in proposition three that he was subject to double punishment and double jeopardy by being charged and convicted of two counts of Using a Vehicle to Facilitate the Discharge of a Firearm. First Appellant argues that the two convictions violate the provisions of 21 O.S.1991, § 11. However, Section 11 is reserved for those cases where one act is punished under two separate provisions of State statutes.

> [An] act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, ... but in no case can it be punished under more than one; ...

21 O.S.1991, § 11

Section 11 does not apply here. Therefore, we must examine whether the two convictions violate the double jeopardy provisions of our constitution. The elements of Using a Vehicle to Facilitate the Discharge of a Firearm are:

1. use of any vehicle
2. to facilitate the intentional discharge;
3. of any firearm;
4. in the conscious disregard for the safety of any other person or persons.

21 O.S.Supp.1992, § 652(B).

The two counts of Using a Vehicle to Facilitate the Discharge of a Firearm differ only in the names of the victims that were injured by gunfire. The facts show that Appellant discharged the firearm in conscious disregard and even with an intent to kill others, plural. The State did not have to prove different facts for each count. The State only had to show that Appellant discharged the firearm with the conscious disregard for the safety of others.

This case is analogous to the case of *Hunnicutt v. State*, 755 P.2d 105 (Okl.Cr.1988), where the defendant was charged with two

---

**3.** The officer testifying about this said he was 5'11" tall.

counts of receiving stolen property after he bought two stolen pistols from an undercover police officer. In *Hunnicutt,* we held that the federal constitutional right to be free from double jeopardy bars conviction for multiple counts of one offense arising out of one transaction. We determined that the purchase of the guns constituted a single transaction and constituted only one count of receiving stolen property. *Id* at 109–110.

The same result was reached in *Trim v. State,* 909 P.2d 841 (Okl.Cr.1996), where the defendant was charged with multiple counts of selling obscene magazines to an undercover police officer in one transaction; one count for each magazine.

In *Hunnicutt* we cited *Robinson v. United States,* 143 F.2d 276, 277 (10th Cir.1944), *modified on other grounds,* 147 F.2d 915 (10th Cir.1945), wherein the court stated,

> Merely because one element of a single criminal act embraces two persons or things, a prosecutor may not carve out two offenses by charging the several elements of the single offense in different counts and designating only one of the persons or things in one count and designating only the other person or thing in the other count.

*Hunnicutt,* 755 P.2d at 111.

We note that in the cases from other jurisdictions, cited by Appellee, the defendants were charged with multiple counts of the same crime which required a specific intent to injure.[4] Our "drive by" shooting statute does not require any specific intent to injure or kill. Had Appellant been charged with a specific intent crime, the result may have been different.

■ We hold that, under the facts of this case, regardless of the number of people whose safety was disregarded, only one count of Using a Vehicle to Facilitate the Intentional Discharge of a Firearm is supported. All of the people injured were shot during one single "shooting event" wherein a single barrage of gunfire was fired at a house which was occupied by seven individuals. The two counts were not separated by time, place or circumstance. We hold that where a vehicle is used to facilitate the intentional discharge of a weapon during one single transaction or "shooting event" only one count of Using a Vehicle to Facilitate the Intentional Discharge of a Firearm is appropriate. Consequently, we hold that count three must be reversed and remanded with instructions to dismiss based upon double jeopardy grounds.

In proposition four, Appellant argues that the introduction of a MAK–90 semi-automatic assault rifle and a tape showing the firing of this rifle constituted prejudicial error. It is undisputed that this rifle was not used in this incident, and the jury was instructed as such. However, witnesses testified that this rifle was similar to the one used by Appellant. One witness testified that the rifle looked no different from the one in the possession of Appellant Locke on the night of the shooting. Also, a ballistic expert testified that the bullets retrieved from the scene, although not coming from this particular rifle, had characteristics similar to rounds fired from this rifle.

■ At issue is the relevance of the rifle introduced into evidence. Oklahoma statutes allow the introduction of any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." 12 O.S.1991, § 2401. In this case, the State had the burden of proving that Appellant had malice aforethought for first degree murder and the State had to prove that Appellant acted in conscious disregard for the life of others in the other counts. It can be concluded that the State needed to show the jury the type of weapon used and

---

4. *State v. Ferreira,* 69 Wash.App. 465, 850 P.2d 541 (1993) (Appellate court found that defendant had five acts of second degree assault which requires a specific intent to create apprehension or fear.) *People v. Williams,* 14 Cal.App.4th 601, 17 Cal.Rptr.2d 583 (1993) (Defendant was convicted of two counts of attempted murder which was enhanced because he discharged a firearm from a vehicle.) *Vigil v. State,* 563 P.2d 1344 (Wyo.1977) (Defendant was convicted of five counts of assault with a deadly weapon which requires a specific intent to place a person in fear.)

its capabilities in order for them to determine these relevant facts.

The tape of the firing was also introduced to show how the shells are ejected when firing the rifle. This was in response to defense questioning regarding the fact that all of the spent cartridges were not recovered at the scene. The tape shows how empty shell casings are rapidly and forcefully ejected from the rifle.

■ The admissibility of demonstrative evidence is a question of legal relevance within the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse of discretion. *Owens v. State*, 747 P.2d 959, 960–61 (Okl.Cr.1987) We find no error in the introduction of these two pieces of evidence.

■ Appellant claims, in proposition five, that he was denied a fair trial by the reading of Prince's preliminary hearing testimony. This testimony was used to rehabilitate Prince after defense attorneys had cross-examined him about inconsistencies between his trial and preliminary hearing testimony. When the prosecutor was using the preliminary hearing transcript for improper reasons, the trial court sustained Appellant's objections. We hold Appellant was not denied a fair trial by the use of the preliminary hearing transcript at trial.

In proposition six Appellant argues that he was prejudiced by contact between a juror and a member of the victim's family. This contact consisted of a juror patting the back of a victim's relative. This conduct occurred after there had been a finding of guilt and after the second stage proceedings.

■ Appellant has not shown how he was prejudiced by this conduct. The State sought the death penalty for Appellant, however, the jury recommended punishment be set at life without parole. The record fails to reflect that defense counsel offered any evidence or requested that the juror be questioned in order to support his allegation. A defendant must show actual prejudice from any alleged jury misconduct and defense counsel's mere speculation and surmise is insufficient premise upon which to cause reversal. *West v. State*, 617 P.2d 1362, 1367

(Okl.Cr.1980). In light hereof we find this assignment of error without merit.

■ In proposition six Appellant claims he was denied a fair trial because of the prosecutor's improper and prejudicial comments. We have examined the alleged improper comments and the accompanying record. First Appellant argues that the prosecutor interjected his personal opinion about Appellant's mental state. We find that this comment was based on the evidence and was not improper. *See Carol v. State*, 756 P.2d 614, 617 (Okl.Cr.1988).

■ Appellant next argues, in proposition eight, that the prosecutor was allowed to comment on evidence not introduced during the trial. The evidence consisted of preliminary hearing testimony and the position of victim Lopez, Sr.'s head at the time of the shooting. The preliminary hearing testimony referred to in closing was testimony used by the defense to impeach witness Morrison. Morrison had claimed that the court reporter had changed his testimony. The court reporter testified that the testimony was not changed. The argument about the position of Lopez' head was properly based on reasonable inference supported by the evidence.

We find that the arguments fell properly within the wide range of argumentation allowed and that Appellant was not improperly prejudiced by them. *See Miller v. State*, 751 P.2d 733, 739 (Okl.Cr.1988).

■ Appellant contends in proposition nine that his sentences were excessive. Evidence indicated that Appellant knew the house was occupied. Appellant fired a full magazine from his assault rifle into an occupied wood framed house at a level where people would be struck. It is amazing that more individuals were not killed. We find that the sentences bear a direct relationship to the nature and circumstances of the offense and do not shock our conscience. *See Freeman v. State*, 876 P.2d 283, 291 (Okl.Cr. 1994).

Accordingly, Appellant's Judgment and Sentence for counts one and two are **AFFIRMED**. Count three is **REVERSED** and **REMANDED** with instructions to **DISMISS**.

STRUBHAR, V.P.J, concurs.

LUMPKIN, J., concurs in result.

CHAPEL, P.J., and JOHNSON, J., concur in part/dissent in part.

LUMPKIN, Judge, concurring in results.

I concur in the results reached by the Court in this case. However, I do so based on an application of the statutory language contained in 21 O.S.Supp.1992, § 652(B). As the opinion notes "[t]his statute is limited by the act of using a vehicle to facilitate the intentional discharge of a firearm in a reckless manner". The focus of subsection B is on the use of a vehicle regardless of the number of persons whose safety was disregarded in the discharge of a weapon from the vehicle. Subsections A and B of Section 652 focus on the prohibited acts being committed on "another", i.e. the specific intent analysis in the Court's opinion. For that reason, separate charges may be filed and convictions affirmed under Subsection A and C for each individual victim of the prohibited act. However, the operative language of Subsection B is *the use of the vehicle* to facilitate the intentional discharge of a weapon in conscious disregard for the safety of any other *person or persons*. Applying the plain language of the statute, only one conviction can be sustained for the use of the vehicle at that particular place at the same time. That is not to say a single charge under Subsection B could not be joined with multiple counts under other statutory provisions which provide for separate offenses when separate victims are involved.

CHAPEL, Presiding Judge, concurring in part/dissenting in part:

I concur in the Court's decision affirming Locke's convictions for murder and using a vehicle to facilitate the discharge of a firearm ("drive-by" shooting). Because I believe the Legislature intended to allow multiple prosecutions under the "drive-by" statute,[1] I would affirm Locke's second conviction for using a vehicle to facilitate the discharge of a firearm.

The majority concludes that Locke cannot be convicted of two counts under Section 652(B) where the elements of the crime are the same and the only difference is the names of the victims. I disagree. The opinion cites by analogy *Hunnicutt v. State*[2] and *Trim v. State*.[3] In *Hunnicutt* we held that only one offense occurred when the defendant purchased a sack which contained more than one contraband item. In *Trim* we found only one offense where the defendant sold several obscene magazines at one time. Purchasing one sack or making one sale are easily distinguishable from Locke's behavior in shooting several bullets in rapid succession into an occupied house.

The majority states the "drive-by" provision requires no specific intent to injure or kill and suggests the result might be different were Locke charged with a specific intent crime. On the contrary, Section 652(B) requires that the use of a vehicle facilitate an **intentional** discharge of a firearm, crossbow or weapon in **conscious disregard** for the safety of another person or persons. Thus our "drive-by" shooting statute does require specific intent.

Although this specific intent element does not require the intent to injure or kill, we must interpret this provision in context to determine the Legislature's intentions. The "drive-by" provision is contained within Section 652, which also prohibits shooting with intent to kill (Section 652(A)) and assault with a deadly weapon (Section 652(C)). The offense of shooting with intent to kill explicitly requires the intent to kill any person. Assault and battery with a deadly weapon does not explicitly require an intent to injure or kill if the weapon or force used is likely to produce death; simple assault requires a willful attempt to injure another,[4] simple battery requires only the willful use of force with no intent to injure,[5] and assault and

---

1. 21 O.S.Supp.1992, § 652(B).

2. 755 P.2d 105 (Okl.Cr.1988).

3. 909 P.2d 841 (Okl.Cr.1996).

4. 21 O.S.1991, § 641.

5. 21 O.S.1991, § 642.

battery with a dangerous weapon requires intent to do bodily harm.[6] Taking this category of crimes as a whole, it is clear the Legislature intended to punish willful use of force or violence against another whether or not a defendant has the specific intent to injure or kill.

"Drive-by" shooting, like shooting with intent to kill or assault and battery with a deadly weapon, is indisputably a crime against the person. The Legislature intended to stop persons from using vehicles to aid them in shooting other people, and the focus is on behavior which aids the intentional shooting. Crimes against the person are separate and distinct if they are directed at separate victims. "[I]t has long been part of our jurisprudence that, where crimes against the person are involved, even though various acts are part of the same transaction, they will constitute separate and distinct crimes where they are directed at separate and distinct persons. Temporal and/or spatial proximity or the fact that the weapon used was, or was not, identical, are not material."[7] The majority opinion offers no compelling reason why this well-settled rule should not apply to this particular crime against the person.

The majority holds that although Locke shot over fifteen times and could have injured seven people, he remains liable for only one criminal charge under this statute. This result makes no sense. The Legislature clearly intended this section to impose an additional punishment for drive-by shootings, not to give defendants a discount rate for shooting into a crowd. Other jurisdictions, interpreting similar provisions, have reached the same conclusion.[8] As one California court found:

> "The primary purpose of the proscription against double punishment 'is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.'"[9]

Locke's actions twice violated Section 652(B), involved separate victims, and were properly prosecuted in two counts. I would affirm both convictions.

I am authorized to state that Judge Charles Johnson joins in this vote.

---

6. 21 O.S.1991, § 645.

7. *Jennings v. State*, 506 P.2d 931, 935 (Okl.Cr. 1973) (no double jeopardy violation where defendant was prosecuted for two counts of assault with a dangerous weapon against different victims); *Hoffman v. State*, 611 P.2d 267 (Okl.Cr. 1980) (where the court found no double jeopardy violation where defendant was prosecuted for murder after acquittal for feloniously pointing a weapon at a police officer in the same transaction); *Clay v. State*, 593 P.2d 509 (Okl.Cr.1979) (where the court found no double jeopardy violation where defendant was charged with robbery with firearm, kidnapping, and assault while masked and where crimes were committed against different victims); *Wilson v. State*, 506 P.2d 604 (Okl.Cr.1973) (where defendant was prosecuted for assault and battery with a dangerous weapon and attempted assault and battery with a dangerous weapon, and the court found no double jeopardy violation where some elements differed and different victims were involved).

8. *People v. Williams*, 14 Cal.App.4th 601, 17 Cal. Rptr.2d 583 (2 Dist.1993); *People v. Alvarez*, 9 Cal.App.4th 121, 11 Cal.Rptr.2d 463 (2 Dist. 1992); *State v. Ferreira*, 69 Wash.App. 465, 850 P.2d 541 (Div. 3 1993); *Vigil v. State*, 563 P.2d 1344 (Wyo.1977).

9. *Alvarez*, 11 Cal.Rptr.2d at 467.