1999 OK CR 16

**Christopher Howard DAVIS, Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F–97–72.**

Court of Criminal Appeals of Oklahoma.

April 14, 1999.

As Corrected April 15, 1999.

Rehearing denied May 26, 1999.

Steven D. Hess, Norman, Thomas E. Salisbury, Tonkawa, Attorneys for Appellant at Trial.

John G. Maddox, Lisa Goodspeed–Tate, Newkirk, Attorneys for the State at Trial.

Perry Hudson, Katherine Jane Clark, Oklahoma Indigent Defense System, Norman, Attorney for Appellant on Appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, Attorneys for Appellee on Appeal.

## *OPINION*

STRUBHAR, Presiding Judge:

¶1 Appellant, Christopher Howard Davis, was tried in the District Court of Kay County, Case No. CF–95–450, for the crime of First Degree Murder. The State filed a Bill of Particulars alleging two aggravating circumstances: 1) that the murder was especially heinous, atrocious or cruel, and 2) the existence of a probability Appellant would commit criminal acts of violence that would constitute a continuing threat to society. The jury trial was held before the Honorable Leslie D. Page. The jury found Appellant guilty of the crime charged and also found the existence of both alleged aggravating circumstances. Appellant was sentenced to death. From this Judgment and Sentence Appellant has perfected his appeal.[1]

## FACTS

¶2 Around 12:30 a.m. on October 29, 1995, Officer Kevin Ormand of the Ponca City Police Department was approached by Appellant in the police department parking lot. Appellant raised his hands and said to the officer, "I just killed my aunt." The officer responded, "You what?" Appellant repeated, "I just killed my aunt. I'm tired of her drinking." Ormand asked where this had happened and Appellant told him, "212 South 7th." Appellant's hands and clothes were covered with a dry brownish substance.

---

1. Appellant's Petition in Error was filed in this Court on July 14, 1997. His Brief–in–Chief was filed on February 13, 1998, and the State's Response Brief was filed on June 15, 1998. The case was submitted to this Court on July 2, 1998, and oral argument was heard on October 27, 1998.

The officer escorted Appellant into the police station and asked Officer Jim Sherron to place Appellant in a holding cell and watch him. He instructed that Appellant's clothing not be taken from him and that Appellant not be allowed to wash his hands.

¶ 3 While Officer Sherron sat and watched Appellant in the holding cell, Appellant stated that he wanted to talk to somebody. Sherron asked Appellant what he wanted to talk about. Appellant replied that he had stabbed his aunt three or four times. A while later, Appellant asked Sherron, "What do you get?" Sherron responded, "For what?" Appellant said, "For murder. I killed my aunt."

¶ 4 While Sherron watched Appellant, Orman had an ambulance and other police officers dispatched to 212 South 7th Street. When authorities arrived at the address, a duplex that Appellant shared with his aunt, they found the victim, Billie Jo Davis–Pollard lying naked in a pool of blood on the kitchen floor. She had suffered several stab wounds.

¶ 5 After determining that the victim was dead, Detective William Thornton and Captain Porter returned to the police station to interview Appellant. During custodial interrogation Appellant again admitted that he had killed his aunt.

### PRE–TRIAL ISSUES

■ ¶ 6 On July 30, 1996, defense counsel filed an Application for Determination of Competency claiming that Appellant had been uncommunicative and unable to assist in his defense. A hearing was held on the application on July 30, 1996, and Appellant was ordered to undergo a competency evaluation. On September 16, 1996, at the scheduled Post–Examination Competency Hearing, defense counsel acknowledged that they had received a report on Appellant's competency from Eastern State Hospital. Defense Counsel requested a continuance so that a psychologist retained by the defense could also have opportunity to examine Appellant. This request was granted and the hearing was continued until such examination could take place. On September 26, 1996, the Post–Examination Competency Hearing was held. At this hearing it was stipulated by defense counsel that both the report from Eastern State Hospital and the report from defendant's retained psychologist, Dr. Murphy, concluded that Appellant was competent. Appellant was found by the trial court to be competent to stand trial.

¶ 7 Appellant was not present at any of the proceedings related to competency. However, defense counsel stated on the record, at the Post–Examination Competency Hearing that he was authorized by Appellant to waive Appellant's right to be present at the hearing. Appellant now argues in his fifth proposition that the trial court erred in allowing the hearing on his competency to be held in his absence.

■ ¶ 8 He first argues that the constitutional right to be present at a competency trial should be non-waivable. It is true that a defendant has a due process right to be present at his trial "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); *See also Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). However, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder,* 291 U.S. at 107–08, 54 S.Ct. at 333. In light of the fact that the results of two reports assessing Appellant to be competent were considered at the Post–Examination Competency Hearing, one of which was given by Appellant's retained psychologist, we do not find that Appellant's absence from the hearing thwarted the trial court's ability to fairly and justly assess Appellant's competency. Under these circumstances we find that Appellant was not deprived of any constitutional rights by being allowed to waive his right to attend the hearing at which his competency was determined. We do not find that the constitutional right to be present at a competency trial should be per se non-waivable.

¶ 9 Next Appellant contends that the record is not sufficient to establish that he expressly and unequivocally waived his absolute right to be present at his competency proceedings. The United States Supreme Court has held that "[t]he district court need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have the right to attend." *Gagnon,* 470 U.S. at 528, 105 S.Ct. at 1485. This Court is not persuaded that the competency hearing in the present case was a part of the capital trial process which required that the waiver of the right to be present be made by Appellant expressly and unequivocally on the record. *Cf. Taylor v. State,* 1995 OK CR 10, ¶¶ 46–50, 889 P.2d 319, 339–40 (Court denied claim of defendant, who was not present at Post–Examination Competency Hearing, that the trial judge could not have allowed defense counsel to waive defendant's right to present evidence of incompetency). We find Appellant's waiver in this case to have been sufficient.

¶ 10 Finally, Appellant argues that his absence from the competency proceedings was prejudicial. In support of this he cites *Bryson v. State,* 1994 OK CR 32, 876 P.2d 240, for the position that judicial observation of a defendant is so important that a judge may rely solely upon his or her observations to the exclusion of expert testimony in deciding competency. The Court in *Bryson* held that the determination of competency "is made based upon the particular facts and circumstance of each case. The trial court is not bound to give precedence to the opinions of expert witnesses nor is it bound to consider opinions of witnesses which are not relevant to its decision." *Id.* 1994 OK CR 32 at ¶ 12, 876 P.2d at 249–50.

¶ 11 We add now, that this determination can also be based entirely on the reports or testimony of experts if to do so would be prudent under the facts and circumstances of a particular case. In the present case, where both the court retained expert and Appellant's own retained expert opined that Appellant was competent to stand trial, we find it was acceptable for the trial court to determine Appellant's competency in his absence. Appellant was not prejudiced by his absence from the proceedings.

¶ 12 Appellant next contends that Oklahoma's statutory definition of competency is unconstitutional in that it requires only that the defendant understand the nature of the charges against him. Appellant cites *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960), for its holding that the Fourteenth Amendment requires a defendant have "a rational as well as factual understanding of the proceedings against him." Although Appellant asserts that Oklahoma's competency statutes fall short of requiring the defendant to have a rational as well as factual understanding of the proceedings against him, as is required by *Dusky,* this Court has held that these same principles are reflected in Oklahoma's law. Title 22 O.S.1991, § 1175.1 defines competency as "the present ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him, and to ... effectively and rationally assist in his defense." We have interpreted this language to proffer a two-part test requiring first that an accused have sufficient ability to consult with his or her attorney and second, that an accused have a "rational and actual understanding of the proceedings against him." *Middaugh v. State,* 1988 OK CR 295, ¶ 6, 767 P.2d 432, 434. Accordingly, we have found little or no difference between the effective meaning of Oklahoma's law and the language used by the Supreme Court in *Dusky.* "In both cases, the accused is required to understand the charges against him, the implications of the charges against him and be able to effectively assist his attorney in defense of the charges against him." *Lambert v. State,* 1994 OK CR 79, ¶ 12, 888 P.2d 494, 498. *See also Smith v. State,* 1996 OK CR 50, ¶ 6, 932 P.2d 521, 526–27. Appellant presents no compelling reason to disregard our precedent.

## VOIR DIRE ISSUES

¶ 13 In his fourth proposition Appellant argues that the trial court improperly led the jury to believe that the ultimate responsibility for determining the appropri-

ateness of a death sentence rested with the appellate courts. At the conclusion of the first day of voir dire, the trial court made the following statement to the prospective jurors:

Now, folks, I can't stress too much the importance of this proceeding. You understand a lot of people are going to be looking over our shoulder, what we do here in Kay County. The appellate courts here, Tenth Circuit in Denver, the U.S. Supreme Court, they could all be taking a look at what goes on in this courtroom and I—I don't want anyone at anytime ever to say that we in Kay county give anyone less than they're due under the law.

(TR.I.188) Defense counsel objected, noting that the trial court's comment drew attention to the possibility of appellate review. Defense counsel's motion for mistrial was denied and Appellant argues on appeal that this ruling was in error.

■ ¶ 14 Appellant complains that the trial court improperly diminished the jury's responsibility in returning the death penalty by commenting on the possibility of appellate review. He supports his argument by citing to *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In *Caldwell* the Supreme Court stated that the Constitution prohibits imposition of a death penalty which rests on a "determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* 472 U.S. at 328–29, 105 S.Ct. at 2639. Only comments which mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision will violate *Caldwell. Darden v. Wainwright*, 477 U.S. 168, 183 n. 15, 106 S.Ct. 2464, 2472–73 n. 15, 91 L.Ed.2d 144 (1986).

¶ 15 When read in its entirety, it appears that the import of the trial court's comment was to convey to the jury the gravity of their duty in deciding this case. It is clear that a reasonable juror would not have felt that his or her ultimate responsibility for determining the appropriateness of the death penalty was diminished by the trial court's comment. *See Al–Mosawi v. State*, 1996 OK CR 59, ¶ 34,

929 P.2d 270, 280. Accordingly, this assignment of error is denied.

## FIRST STAGE ISSUES

■ ¶ 16 The trial court instructed the jury on Appellant's defense of voluntary intoxication. Appellant also requested the jury be given instructions on the lesser offenses of second degree murder and first degree manslaughter. The trial court refused to give these instructions and Appellant argues on appeal that the trial court's failure to give these instructions was error which warrants reversal.

¶ 17 In support of his position that the trial court erred in refusing to instruct the jury on the crime of first degree manslaughter, Appellant argues that *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), requires that a jury deciding a capital case be given instructions on any lesser offense supported by the evidence. This is because a jury which is convinced that a defendant has committed some violent crime, but which is not convinced that the defendant is guilty of a capital crime, might vote for a capital conviction where there is no. alternative other than to set the defendant free without punishment.

¶ 18 We find that the Supreme Court's ruling in *Beck* is not so broad as Appellant maintains. In *Beck* the defendant was charged with the capital crime of robbery-intentional killing. The jury was given the option of either convicting the defendant and imposing the death penalty or of acquitting him. On appeal the defendant argued that the jury should have been instructed on the lesser included offense of felony murder which was warranted by the evidence and would have allowed the jury to convict him and choose between the penalties of death, life or life without the possibility of parole. The Supreme Court held that a death sentence cannot be constitutionally upheld after a jury verdict of a capital offense when the jury was not permitted to consider a verdict of a lesser included non-capital offense. *Id.* 447 U.S. at 626, 100 S.Ct. at 2384.

¶ 19 This ruling is not applicable to the present case. Upon conviction for the crime

of first degree murder under Oklahoma law, one is not automatically assessed the death penalty as was the case in *Beck.* Rather, the jury is given the opportunity to choose between three penalty options: life, life without the possibility of parole and death. *See Cummings v. State,* 1998 OK CR 45, 968 P.2d 821. Accordingly, we find Appellant's argument unpersuasive and hold that the trial court's decision not to give Appellant's requested instruction on first degree manslaughter did not violate Appellant's constitutional rights.

 ¶ 20 Appellant also argues that under Oklahoma law, when a defendant is charged with malice murder and the jury is instructed on the defense of voluntary intoxication, the trial court is required to instruct the jury on lesser degrees of homicide supported by the evidence. It is true that this Court has traditionally required that under such circumstances, instructions on lesser included offenses should be given.[2] However, this Court has also held that jury instructions on lesser included offenses are required only where they are warranted by the evidence. *See Locke v. State,* 1997 OK CR 43, ¶ 10, 943 P.2d 1090, 1094. *See also Robedeaux v. State,* 1993 OK CR 57, ¶ 55, 866 P.2d 417, 431. Further, "[i]t is within the trial court's discretion and responsibility to consider the evidence to determine if such instructions are warranted." *Id.* The only arguable justification for a first degree manslaughter or second degree murder instruction in this case comes from the trial judge's conclusion that the evidence warranted an instruction on the defense of voluntary intox-

ication. However, the evidence did not warrant instructions on either second degree murder or first degree manslaughter. Appellant admitted that he intentionally killed his aunt and waited until his aunt was dead before he went to the police, thereby thwarting any possible attempt to save her life. Instructions on second degree murder are warranted only where there was no specific intent to kill. *See Conover v. State,* 1997 OK CR 6, ¶ 49, 933 P.2d 904, 916. Likewise, an instruction on first degree manslaughter was not warranted as there was no evidence of adequate provocation which is required to support a conviction for this crime. *See Le v. State,* 1997 OK CR 55, ¶ 21, 947 P.2d 535, 546–47. Finding that the requested instructions on lesser degrees of homicide were not warranted by the evidence in this case, we cannot find that the trial court abused its discretion by refusing to give them.

¶ 21 In his second proposition Appellant argues that his constitutional rights were violated when the trial court admitted his custodial statements without properly conducting the necessary *Jackson v. Denno*[3] hearing. Appellant basically confessed four separate times to having killed his aunt. He confessed when he first approached the police station and spoke to Officer Ormand. While he was in the holding cell, Appellant again confessed to Officer Sherron, who was watching him. From approximately 2:00 to 4:30 a.m., Appellant confessed while he was interrogated by Officer Thornton and Captain Porter. Finally, Appellant confessed when he was interrogated a second time by

---

2. *See Pickens v. State,* 1994 OK CR 74, 885 P.2d 678, *overruled on other grounds, Parker v. State,* 1996 OK CR 19, ¶ 23, 917 P.2d 980, 986 (Court held that instructions on lesser included offenses should be given where a defendant may be guilty of homicide, and where intoxication might prevent a defendant from forming specific intent.). *See also Edwards v. State,* 1982 OK CR 204, ¶ 10, 655 P.2d 1048, 1051 (Court held that voluntary intoxication is not a complete defense to criminal culpability, but may be considered in determining whether the accused possessed the requisite criminal intent. Evidence of intoxication negated the intent element and appellant was properly convicted of first degree manslaughter.); *Jones v. State,* 1982 OK CR 112, ¶ 12, 648 P.2d 1251, 1255 (Court held, "while voluntary intoxication is not a complete defense to criminal culpability,

it may be considered in determining whether the accused possessed the requisite criminal intent during the commission of the crime."). *But see Charm v. State,* 1996 OK CR 40, ¶ 6 n. 8, 924 P.2d 754, 775 n. 8 (Court held that "[n]othing in the voluntary intoxication instruction suggests that if the jury finds lack of intent for malice murder, they must automatically consider a lesser included offense. In fact, OUJI–CR 735 provides that if the State fails to prove intent beyond a reasonable doubt due to an accused's intoxication, the jury must simply find the accused not guilty of that particular crime.").

3. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Thornton and Porter on the evening of October 29, 1995.

¶ 22 During trial, before Officer Sherron testified, an in camera hearing was held regarding the statements Appellant had made to him while he was in the holding cell. It was determined by the trial court that these statements were made by Appellant voluntarily, not pursuant to a custodial interrogation or the functional equivalent of such. Accordingly, Sherron was allowed to testify about the statements Appellant had made to him.

¶ 23 Before the video taped interrogations of Appellant by Thornton and Porter were admitted into evidence, defense counsel objected to the admissibility of Appellant's confessions made during these interrogations. In contesting the admissibility of these confessions, defense counsel argued that the latter two custodial interrogations were inadmissible as they were tainted by the preceding confession which had been illegally obtained by Officer Sherron. The trial court dismissed this argument noting that it had already found that the statements made by Appellant to Officer Sherron were made voluntarily and not pursuant to a custodial interrogation. Defense counsel also argued that the confessions made during the latter custodial interrogations were not voluntary. The State responded that there was no evidence Appellant had been coerced. The trial court did not conduct a hearing on the voluntariness of Appellant's confessions made to Thornton and Porter, but instead decided, based upon the argument of defense counsel and the prosecutor, that Appellant's confessions were voluntarily made.

 ¶ 24 In *Jackson v. Denno,* the United States Supreme Court established a defendant's right to an in camera hearing on the voluntariness of his confession. A defendant does not have the right to a *Jackson v. Denno* hearing as to the voluntariness of his inculpatory custodial statements where he does not object to the admission of the statements. *Wainwright v. Sykes,* 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). However, in the present case, the Appellant clearly objected to the admissibility of the statements he made during his custodial interrogations with Thornton and Porter.

 ¶ 25 It must be found that Appellant was entitled to a *Jackson v. Denno* hearing on the voluntariness of the statements he made during the custodial interrogations. Absent this proper and required determination regarding the constitutionality of Appellant's confessions, the video taped confessions should not have been admitted into evidence. Because this error was of constitutional magnitude, this Court must apply the test set forth in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967) to determine whether this error was harmless beyond a reasonable doubt. Because the jury had already heard Appellant's two previous confessions where he admitted to having killed his aunt, it can be found beyond a reasonable doubt that Appellant would have been found guilty even absent the introduction into evidence of his latter two confessions.

 ¶ 26 However, it is not as clear that the video taped confessions did not affect the second stage of trial. It is difficult to find, beyond a reasonable doubt, that the jury's decision regarding punishment was not influenced by having watched Appellant's demeanor as he admitted to having purposefully killed his aunt. For this reason it is necessary that this Court remand this case for resentencing. The trial court shall hold a *Jackson v. Denno* hearing on the voluntariness of Appellant's video taped confessions before they are admitted into evidence in the resentencing proceeding.

¶ 27 Appellant argues in his third proposition that his initial custodial interrogation by Thornton and Porter was obtained in violation of his constitutional rights because he did not make a knowing, intelligent and voluntary waiver of his *Miranda* rights. Appellant argues that his decisions to waive his right to remain silent and his right to have counsel present were not made knowingly and intelligently because he was intoxicated and exhausted. Clearly a more informed decision on this issue could have been made had the trial court conducted a *Jackson v. Denno* hearing on the admissibility of Appel-

lant's video taped confessions. Again, while the erroneous admission of the video taped confessions can be held harmless as to the first stage proceedings, the trial court's failure to conduct such a hearing was error requiring the case be remanded for resentencing, as was discussed in Proposition III.

¶ 28 In his seventh proposition Appellant complains the trial court committed reversible error by permitting the state to introduce evidence of other bad acts that were not part of the transaction that resulted in the death of the victim in this case. Appellant was initially charged with having raped his aunt as well as having killed her. While there was evidence that Appellant had engaged in sexual intercourse with his aunt before her death, there was not sufficient evidence that he had raped her. Accordingly, the rape charge was dismissed at preliminary hearing. Over defense objection, evidence that Appellant had sex with his aunt was introduced in the first stage of trial. Appellant argues on appeal that this evidence should not have been introduced as it was evidence of other bad acts and not part of the res gestae of the case. He also complains that the State did not give notice that it intended to introduce this evidence as is required by *Burks v. State,* 1979 OK CR 10, 594 P.2d 771, *overruled in part on other grounds, Jones v. State,* 1989 OK CR 7, 772 P.2d 922.

¶ 29 Given the strength of the evidence properly admitted against Appellant in the first stage of trial, we cannot find that any error in the admission of the evidence at issue in this proposition requires relief. This error would be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828.

¶ 30 Appellant argues in his ninth proposition that the trial court erred in admitting into evidence, over defense objection, several inflammatory photographs of the crime scene. He complains that these photographs depicting the victim, had minimal probative value as they were duplicative of each other, the testimony of several witnesses and a video tape of the crime scene. He also alleges that these photographs were highly prejudicial and served only to inflame the passions of the jury.

¶ 31 The test for admissibility of photographs is not whether they are gruesome or inflammatory, but whether their probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State,* 1993 OK CR 41, ¶ 24, 862 P.2d 1273, 1280, *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). *See also* 12 O.S.1991, § 2403. It is well established that "photographs of murder victims can be probative in many respects. . . . They can show the nature, extent and location of wounds, establish the corpus delicti, corroborate testimony of medical examiners and expert witnesses and depict the crime scene." (Citation omitted). *Smallwood v. State,* 1995 OK CR 60, ¶ 33, 907 P.2d 217, 228. Further, "[t]he admissibility of demonstrative evidence is a question of legal relevance within the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse of discretion." *Locke,* 1997 OK CR 43 at ¶ 23, 943 P.2d at 1096.

¶ 32 The photographs at issue in the present case accurately depict the crime scene and corroborate the testimony of several State witnesses. We find that this probative value is not substantially outweighed by the prejudicial impact. Accordingly, this proposition is without merit.

## ISSUES RELATING TO BOTH STAGES OF TRIAL

¶ 33 Because this case must be remanded for resentencing we will omit from our discussion those arguments which pertain to and do not affect second stage proceedings.

¶ 34 Appellant argues in his eighth proposition that numerous instances of prosecutorial misconduct deprived him of his constitutional right to a fair trial and reliable sentencing proceeding. He first complains that the prosecutor argued facts not in evidence during the first stage of trial by making numerous references to the alleged sexual relationship between Appellant and his aunt. He contends this information was irrelevant and prejudicial and was introduced only to inflame the jury. Again, in light of

the strong evidence of guilt properly admitted in the first stage of trial, we find that any error committed by the improper admission of evidence regarding a sexual relationship between Appellant and his aunt was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828. Any error occurring in the second stage of trial will be cured by the resentencing proceeding.

¶ 35 Next, Appellant complains that the prosecutor improperly aligned himself with the jury during the first stage of trial. The comments complained of were met with timely objection. After the first objection the trial court admonished the prosecutor to refrain from making such comments. The trial court did not admonish the jury as an admonishment was not requested. Objections to two other comments by the prosecutor were overruled. "In order for the remarks of the prosecuting attorney to constitute reversible error they must be flagrant and of such a nature as to be prejudicial to the defendant." *Willingham v. State,* 1997 OK CR 62, ¶ 47, 947 P.2d 1074, 1084. The comments complained of do not reflect flagrant attempts by the prosecutor to align himself with the jury. We do not find that the prosecutor's comments were of the type that would constitute prejudicial error.

¶ 36 Finally, Appellant complains that the repeated abuses of the prosecutors so infected the trial with unfairness as to render it fundamentally unfair. Although some of the comments complained of were improper, some were appropriate. "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such to deprive the defendant of a fair trial." *Duckett v. State,* 1995 OK CR 61, ¶ 47, 919 P.2d 7, 19. Because we do not find that the inappropriate comments deprived Appellant of a fair trial, affecting the jury's finding of guilt, we decline to grant relief on this proposition.

¶ 37 Appellant complains in his tenth proposition that he was unconstitutionally deprived of effective assistance of counsel by his counsels' failure to ensure his presence at his competency trial and by

counsels' failure to present a second stage defense.

¶ 38 To prevail on a claim of ineffective assistance of counsel, Appellant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance by showing both that trial counsel's performance was deficient and that he was prejudiced by the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish prejudice, Appellant must show a reasonable probability that, but for trial counsels' errors, the result of trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. This Court need not determine whether trial counsels' performance was deficient if Appellant cannot show he was prejudiced by trial counsels' failure to ensure his presence at his competency trial and by counsels' failure to present a second stage defense.

¶ 39 While it may have been prudent for defense counsel to schedule Dr. Murphy's evaluation so that it did not prevent Appellant from being present at his competency trial, we are not convinced that his absence from this proceeding prejudiced him. This is true especially in light of the fact that Appellant's own expert found him to be competent. As he has shown no prejudice, we decline to find that defense counsels' failure to secure Appellant's presence at the competency trial rendered his assistance ineffective.

¶ 40 Appellant also argues that defense counsel was ineffective for failing to present a second stage defense. He claims that defense counsel failed to investigate and uncover mitigating evidence and that the trial court caused defense counsel to be ineffective by failing to provide the defense with Department of Human Services records which detailed Appellant's abusive childhood. The record indicates that defense counsel made a timely request for DHS records and the trial court issued an order requiring DHS to submit the requested records. DHS did not initially submit the records because of a procedural problem. The problem was correct-

ed and DHS was again asked to submit the requested records. Instead of delivering the records to defense counsel, DHS delivered the records to the district court. Through inadvertence and oversight, the file was not given to defense counsel until the middle of trial. Defense counsel argued at trial that the DHS file pointed to significant mitigating evidence which could have been more fully investigated had it been received in a timely 'fashion. He requests on appeal that this Court order an evidentiary hearing be held on his Sixth Amendment claims of state-induced ineffective assistance of counsel. It is certainly possible that Appellant's request is warranted under Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (1998). However, because this case must be remanded to the trial court for resentencing, this Court need not determine whether an evidentiary hearing on this issue is required as the resentencing proceeding will cure any error which occurred here.

## ISSUES RELATING TO THE SECOND STAGE OF TRIAL

¶ 41 Again, because this case must be remanded for resentencing we will omit from our discussion those arguments which do not affect this Court's decision.

■ ¶ 42 In his final proposition, Appellant contends the accumulation of errors in this case so infected the trial and sentencing proceedings that he was denied due process of law and a reliable sentencing proceeding in violation of his rights under the Fourteenth Amendments of the federal constitution and comparable provisions of the Oklahoma Constitution. When there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial. *Bechtel v. State,* 1987 OK CR 126, ¶ 12, 738 P.2d 559, 561. We find the errors which occurred during the course of the present trial, taken together, were significant enough to render unreliable only the sentencing proceeding in

this case. Accordingly, the judgment against Appellant is **AFFIRMED**, but his sentence is **REVERSED** and **REMANDED** to the District Court for **RESENTENCING.**

LUMPKIN and LANE, JJ.*, concur in results.

JOHNSON and CHAPEL, JJ., concur.

LUMPKIN, Vice–Presiding Judge, concur in results.

¶ 1 I concur in the results of this case, however I write separately to address the following issues. The failure to hold a *Jackson v. Denno* hearing could be addressed through a remand for a retroactive hearing on the voluntariness of the confession. However, the Court's method of resolving the issue is just as viable.

¶ 2 As to the issue of lesser included offenses, the Court fails to recognize this Court has unequivocally held that second degree murder is not a lesser included offense of first degree malice murder. *Willingham v. State,* 947 P.2d 1074, 1080–82 (Okl. Cr.1997). The present case also provides another example why this Court should adopt objective criteria for trial courts to utilize in deciding if a defendant's requested instruction on his theory of defense should be given. *See Jackson v. State,* 964 P.2d 875, 899 (Okl. Cr.1998) (Lumpkin, J. Concur in results). While the Court says the instruction on the lesser included offense of first degree manslaughter was "not warranted by the evidence in this case," it should go further and apply the criteria established in *Kinsey v. State,* 798 P.2d 630, 632–33 (Okl.Cr.1990).

¶ 3 Further, it should be noted the criteria set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for evaluating effectiveness of counsel has been further explained in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Applying the *Lockhart* standard, the record is void of any evidence the trial was rendered unfair and the verdict rendered suspect or unreliable.

* Judge Lane entered his vote in this case prior to his retirement on December 31, 1998.